# IN THE COURT OF APPEALS OF TENNESSEE, AT JACKSON

_____

FILED

**March 17, 1999**

**Cecil Crowson, Jr.**
Appellate Court Clerk

|   |   |   |
|---|---|---|
| **GREGORY HILL, et al**, | ) | Shelby Law No. 70577-9 and 70576-9 T.D. |
|  | ) | Consolidated |
| Plaintiff/Appellants. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9803-CV-00078 |
|  | ) |  |
| **CITY OF GERMANTOWN, et al**, | ) |  |
|  | ) |  |
| Defendants/Appellees/Cross-Appellants. | ) |  |
|  | ) |  |

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable Robert L. Childers, Judge**


**R. Sadler Bailey**,
**Andrew C. Clarke**,
BAILEY & CLARKE, Memphis, Tennessee
Attorneys for Plaintiffs/Appellants Gregory Hill, et al.

**Louis P. Chiozza, Jr.**, Memphis, Tennessee
Attorney for Plaintiffs/Appellants Ronald Crowder, et al.

**John C. Duffy**, WATSON, HOLLOW & REEVES, Knoxville, Tennessee
Attorney for Defendants/Appellees/Cross-Appellants, City of Germantown


OPINION FILED:

**AFFIRMED AND REMANDED**


                                        **FARMER, J.**

**CRAWFORD, P.J.,W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

This appeal involves two separate but consolidated actions arising out of an automobile accident between a vehicle being pursued by two officers of the Germantown Police Department and a vehicle containing Deborah Hill, Amberly Hill, and Walterine Crowder. As a result of the accident, Deborah Hill and Walterine Crowder were killed and Amberly Hill sustained personal injuries. The trial court found that the negligence of the two officers and the City of Germantown was a thirty-five percent proximate cause of the accident and entered a judgment against the City of Germantown in the amount of $130,000.00 for the death Deborah Hill, $130,000.00 for the death of Walterine Crowder, and $52,944.50 for the personal injuries of Amberly Hill. The trial court also awarded the Plaintiffs $25,558.52 in discretionary costs. The Plaintiffs have appealed and the Defendants have cross-appealed. For the reasons set forth below, we affirm the ruling of the trial court.

### Factual History

Chad Cunningham was hired as a part-time reserve officer by the Germantown Police Department in September of 1994 and began working two to three shifts per month in December of 1994. As a reserve officer, Cunningham received approximately 100 hours of general classroom training on how to perform basic police duties. During this training, each reserve officer was given a copy of the Germantown Police Department's written policy regarding police pursuits.[1] In March of 1995, Officer Cunningham became a full-time officer. After being hired as a full-time officer, Officer Cunningham did not immediately receive formal training with respect to police pursuits because there was a six month waiting list to get into the police academy. It is standard procedure at the Germantown Police Department to allow newly hired officers to receive on-the-job training under the supervision of a more experienced officer when the new officer has not yet attended the police academy.

---

[1]Under this policy, officers are permitted to pursue a fleeing suspect based on the officer's belief that a quick response is critical to prevent possible loss of life or serious injury. The officer is directed to use common sense and good judgment when determining whether a particular situation requires the officer to engage in a high speed chase. The pursuit of traffic offenders is not necessarily prohibited under this written policy. On the date of the accident that is the subject of the case at bar, however, there was an informal policy at the Germantown Police Department that an officer should not engage in a high speed pursuit of a traffic offender.

On April 11, 1995, Officer Cunningham was on patrol in his Germantown Police cruiser. Officer John Phillip Hardy, who was training and supervising Cunningham, was riding as a passenger in the patrol car.[2] At approximately 4:45 p.m., Officers Cunningham and Hardy noticed a gray 1985 Buick Regal traveling west on Poplar Avenue with an improperly displayed registration tag. At the instruction of Officer Hardy, Officer Cunningham activated the blue lights of the patrol car and began to follow the Buick. Initially, it appeared that the driver of the Buick was attempting to pull over. As the Buick approached the intersection of Poplar Avenue and Riverdale Avenue, however, Officers Cunningham and Hardy observed a puff of smoke and the Buick began to accelerate. Officer Hardy activated the siren of the patrol car and the officers continued to pursue the Buick, reaching speeds in excess of the forty mile per hour speed limit. The Buick continued to accelerate, reaching a top speed in excess of ninety miles per hour. As the Buick approached Kirby Parkway, Officer Cunningham announced over the radio of the patrol car that the suspect's vehicle was refusing to stop. Lieutenant Mike Hill of the Germantown Police Department then got on his police radio and asked Officer Cunningham "what are the charges." Officer Cunningham responded "traffic only" and informed Lieutenant Hill that they were "pulling off." After losing sight of the Buick, Officer Hardy instructed Officer Cunningham to slow down and stop pursuing the fleeing vehicle. The Buick sped over the hill at the intersection of Poplar Avenue and Kirby Parkway, veered across the center line, and collided with a vehicle being driven by Walterine Crowder. Deborah Hill and her twenty-eight month old daughter Amberly were passengers in the Crowder vehicle.

Deborah Hill and Walterine Crowder were transported by Helicopter to the Regional Medical Center where they both subsequently died. Amberly Hill, who was conscious and crying at the scene of the accident, was taken to LeBonheur Hospital and treated for a cut over her right eye. Following the accident, Amberly Hill displayed a variety of emotional problems. Amberly's father took her to see Dr. Randolph Dupont, a psychiatrist, who concluded that Amberly was suffering from post-traumatic stress syndrome.

### Procedural History

---

[2]On the date of the accident, Officer Hardy had approximately three years of experience as a police officer.

On June 19, 1995, Gregory Hill filed a complaint individually and in a representative capacity against the City of Germantown for the wrongful death of his wife Deborah Hill and the personal injuries of his daughter Amberly Hill. Also on June 19, 1995, Ronald Crowder filed a separate complaint individually and in a representative capacity against the City of Germantown for the wrongful death of his wife Walterine Crowder. The City of Germantown filed separate answers to the Hill and Crowder complaints on September 5, 1995, raising comparative fault as an affirmative defense. On March 29, 1996 and April 10, 1996 respectively, Hill and Crowder amended their complaints against the City of Germantown, naming as additional defendants Officer Cunningham, Officer Hardy, and Eddie Boatwright, the Chief of Police of the City of Germantown. Thereafter on June 14, 1996, separate amended answers to the Hill and Crowder complaints were filed on behalf of the City of Germantown, Boatwright, Officer Cunningham, and Officer Hardy.

The Hill action and the Crowder action were consolidated for trial. The trial judge, sitting without a jury,[3] took the matter under advisement and entered an order finding that Officers Cunningham and Hardy were negligent in engaging in a high speed pursuit of a traffic violator, that the City of Germantown was negligent in failing to adequately train Officer Cunningham with respect to high speed police pursuits, and that the negligence of the Defendants was a thirty-five percent proximate cause of the accident. Additionally, the court assessed the Plaintiffs' damages at $401,249.32 for the death of Walterine Crowder, $621,071.46 for the death of Deborah Hill, and $151,270.00 for the personal injuries of Amberly Hill. After taking into account the Defendants' degree of fault and the limits imposed by the Tennessee Governmental Tort Liability Act,[4] the trial judge awarded the Plaintiffs $130,000.00 for the death of Walterine Crowder, $130,000.00 for the death of Deborah Hill, and $52,944.50 for the personal injuries of Amberly Hill.

The Plaintiffs subsequently filed a motion to alter or amend the judgment, a motion for prejudgment interest, a motion for discretionary costs, and a second motion to alter or amend the

---

[3]There is no right to a jury trial with respect to actions brought pursuant to the Tennessee Governmental Tort Liability Act. *See* Tenn. Code Ann. § 29-30-307 (Supp. 1998).

[4]Under the Tennessee Governmental Tort Liability Act, the maximum amount of damages that a plaintiff can recover from a municipality in a wrongful death or personal injury action is $130,000.00 per injured party and $350,000.00 per accident. *See* Tenn. Code Ann. § 29-20-311 (1980); Tenn. Code Ann. § 29-20-403(b)(2)(A) (Supp. 1998).

judgment. Thereafter, the trial judge entered an order granting in part and denying in part the motion to alter or amend, an order denying the motion for prejudgment interest, an order granting in part and denying in part the motion for discretionary costs, and an order denying the second motion to alter or amend. Both the Plaintiffs and the Defendants have appealed the ruling of the trial court.

## *Issues*

The issues raised on appeal, as we perceive them, are as follows:

I.   Did the trial court err in finding that the City of Germantown did not act with deliberate indifference to the rights of the Plaintiffs and in thus ruling the City of Germantown was not liable under 42 U.S.C. § 1983?

II.   Did the trial court err in comparing the fault of the Defendants with the fault of the fleeing suspect?

III.   Did the trial court err in failing to enter a judgment against Officer Cunningham for the damages incurred by the Plaintiffs in excess of the caps imposed by the Tennessee Governmental Tort Liability Act?

IV.   Did the trial court err in failing to award the Plaintiffs damages for loss of spousal and parental consortium for the wrongful deaths of Deborah Hill and Walterine Crowder?

V.   Did the trial court err in finding that Amberly Hill sustained damages for her personal injuries in the amount of $151,270.00?

VI.   Did the trial court err in awarding the Plaintiffs a total of $25,588.52 in discretionary costs and in apportioning 100% of these costs against the Defendants?

## *Standard of Review*

When a civil action is heard by a trial judge sitting without a jury, our review of the matter is *de novo* on the record, accompanied by a presumption of correctness of the findings below. *See, e.g., Foster v. Bue*, 749 S.W.2d 736, 741 (Tenn. 1988); T.R.A.P. 13(d). We may not reverse the findings of fact made by the trial judge unless they are contrary to the preponderance of the evidence. *See, e.g., Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. App. 1996). This presumption of correctness, however, does not attach to the trial judge's legal determinations or the trial court's

conclusions that are based on undisputed facts. *See, e.g., NCNB Nat'l Bank v. Thrailkill*, 856 S.W.2d 150, 153 (Tenn. App. 1993).

### *42 U.S.C. § 1983*

At trial, the Plaintiffs alleged that, in failing to adequately train Officer Cunningham with regard to high speed police pursuits, the City of Germantown and Chief Boatwright violated the substantive due process rights of Deborah Hill and Walterine Crowder. In *City of Canton v. Harris*, 489 U.S. 378 (1989), the United States Supreme Court recognized that, under certain circumstances, a municipality could be held liable under 42 U.S.C. § 1983 for constitutional violations resulting from the municipality's failure to train its employees. *See id.* at 387. The Court then set forth the standard to be applied in such cases as follows:

> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.

*Id.* at 388. Thus, in the instant case, the City of Germantown may be held liable under § 1983 only if it is determined that, in failing to adequately train Officer Cunningham, the City of Germantown acted with deliberate indifference to the rights of Deborah Hill and Walterine Crowder.

The trial judge ruled in favor of the Defendants with respect to the Plaintiffs' § 1983 claim, stating in pertinent part as follows:

> The Court concludes that the defendant negligently failed to adequately train and educate Officer Cunningham in the instigation and continuation of high speed pursuit. However, the defendant's negligence does not rise to the level necessary to constitute a violation of the plaintiffs' decedents' due process liberty interests secured by either the United States or the Tennessee Constitutions. The Court finds that the defendant acted in good faith in relying upon the provisions of [T.C.A.] Section 38-8-107, and in requiring a senior officer to be present in the police vehicle when an untrained officer was driving. Although the Court finds that the defendant's actions were negligent, its actions were not deliberately indifferent to the substantive due process liberty interests of the plaintiffs' decedents.

Additionally, in ruling on the Plaintiffs' motion to alter or amend the judgment, the court stated in pertinent part as follows:

> Chief Boatwright in my view is guilty of gross negligence. He knew that there needed to be more training and didn't give it. However, he did have a senior officer in the car with Officer Cunningham who did have training. And, again, Officer Hardy was negligent, but Chief Boatwright, again, did have a senior officer in the car. He should have done more, in my opinion, but he didn't. But, again, those actions, that failure, does not rise to the level of deliberate indifference to the rights of the decedents in this case and the injured minor.

In their appellate brief, the Plaintiffs state that they "do not appeal from the factual findings made by the Trial Court" but that the Plaintiffs "aver that the Trial Court's legal conclusions drawn from its factual findings are erroneous." The Defendants argue that, by making this statement, the Plaintiffs waived their right to challenge on appeal the trial court's finding that the City of Germantown and Chief Boatwright did not act with deliberate indifference. It appears, however, that the factual findings referred to by the Plaintiffs were those made regarding the events that occurred on the day of the accident and did not include the trial court's characterization of the Defendants' conduct. Despite the Plaintiffs' statement, the Plaintiffs argue at length in their brief that the conduct of the City of Germantown and Chief Boatwright did, in fact, amount to deliberate indifference to the rights of Deborah Hill and Walterine Crowder. Thus, we conclude the Plaintiffs did not waive their right to challenge on appeal the court's finding with respect to this issue.

In determining whether the City of Germantown and Chief Boatwright acted with deliberate indifference, we must focus on the adequacy of the Germantown Police Department's training program, not whether any particular officer was adequately trained. *See City of Canton*, 489 U.S. at 390-91. Under Tennessee law, all new police officers are required to complete an in-service recruit training program within one year of their date of employment. *See* Tenn. Code Ann. § 38-8-107(a) (1997). On the date of the accident that is the subject of the case at bar, Officer Cunningham had not completed this program, reportedly because there was a six month waiting list to get into the police academy. Officer Cunningham had, however, received a copy of the Germantown Police Department's pursuit policy during his classroom training as a reserve office. At trial, Officer Cunningham testified that, on the date of the accident, he understood that the

Germantown Police Department had a policy against chasing traffic offenders. Under the Germantown Police Department's training policy, a newly hired officer who has not yet attended the police academy is paired with a more experienced officer for on-the-job training. In the instant case, Officer Cunningham was placed under the supervision of Officer Hardy, who had three years of police experience. As the senior officer, Officer Hardy was in charge of Officer Cunningham. In hindsight, it might have been unwise for the Germantown Police Department to allow Officer Cunningham to drive a patrol car without having received his in-service training. However, the fact that the Germantown Police Department provides its new recruits with a copy of its pursuit policy and requires that they work under the supervision of a more experienced officer while waiting to get into the police academy suggests that the Germantown Police Department is not deliberately indifferent to the rights of persons with whom its officer come into contact. Thus, we cannot say that the evidence preponderates against the trial court's finding that the conduct of the City of Germantown and Chief Boatwright does not rise to the level of deliberate indifference.

In light of the foregoing, we conclude that the trial court properly held that the City of Germantown and Chief Boatwright were not liable to the Plaintiffs under 42 U.S.C. § 1983.

### *Comparative Fault*

The Plaintiffs argue that, in apportioning fault, the trial court should not have compared the fault of the Defendants to the fault of the fleeing suspect. Rather, they contend that, disregarding the fault of the fleeing suspect, the trial court should have found that the negligence of the Defendants was a 100% proximate cause of the Plaintiffs' injuries.

In *Turner v. Jordan*, 957 S.W.2d 815 (Tenn. 1997), Emma Turner, a nurse who worked at a Nashville hospital, was attacked and severely beaten by Tarry Williams, a psychiatric in-patient at the hospital. *See id.* at 816. On the day of the attack, Williams was interviewed by Dr. Harold Jordan who found Williams to be "aggressive, grandiose, intimidating, combative, and dangerous." *Id.* at 817. Despite this finding, Dr. Jordan made no attempt to protect Turner from the risk of harm created by the presence of Williams at the hospital. *See id.* at 817. In a negligence action brought by Turner against Dr. Jordan, the trial court instructed the jury that, in apportioning

fault, it could compare the alleged intentional conduct of Williams with the alleged negligent conduct of Dr. Jordan. *See id.* On appeal, the Tennessee Supreme Court disagreed, holding that "the conduct of a negligent defendant should not be compared with the intentional conduct of another in determining comparative fault where the intentional conduct is the foreseeable risk created by the negligent tortfeasor." *Id.* at 823.

In light of the rule set forth in *Jordan*, we must now consider whether the conduct of the fleeing suspect in the instant case may be classified as intentional. Under Tennessee's criminal statutes, the word intentional "refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-106(a)(18) (1997); Tenn. Code Ann. § 39-11-302(a) (1997). The Restatement (Second) of Torts uses the word intent "to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965).

In an attempt to emphasize the distinction between conduct that is intentional and conduct that is merely negligent or reckless, the drafters of the Restatement (Second) of Torts offer the following illustration:

> 2. On a curve in a narrow highway A, without any desire to injure B, or belief that he is substantially certain to do so, recklessly drives his automobile in an attempt to pass B's car. As a result of this recklessness, A crashes into B's car, injuring B. A is subject to liability to B for his reckless conduct, but is not liable to B for any intentional tort.

Restatement (Second) of Torts § 8A illus. 2 (1965). Similarly in the instant case, there is no allegation that the fleeing suspect desired to injure the persons contained in the vehicle being driven by Walterine Crowder. Nor is there any allegation that the fleeing suspect believed that his conduct was substantially certain to result in injuries to the persons contained in the Crowder vehicle. On the contrary, as suggested by the Plaintiffs' own expert witness, the goal of a fleeing suspect is to avoid apprehension by blending into traffic and remaining inconspicuous until the suspect has an opportunity to stop his or her vehicle and hide from the police. It stands to reason, then, that a

suspect who is attempting to remain inconspicuous would not intentionally crash into the vehicle of an innocent bystander.

The trial court concluded that, in attempting to elude Officers Cunningham and Hardy, the fleeing suspect acted in a reckless manner. For the reasons set forth above, we think that the trial court properly characterized the suspect's conduct as reckless rather than intentional. Thus, we find that the rule set forth in *Jordan* is inapplicable to the case at bar and hold that, in apportioning fault, the trial court did not err in comparing the fault of the fleeing suspect with the fault of the Defendants.

### *Tennessee Governmental Tort Liability Act*

The Tennessee Governmental Tort Liability Act limits the amount of damages that can be awarded against a governmental entity in a wrongful death or personal injury action to $130,000.00 per injured party and $350,000.00 per accident. *See* Tenn. Code Ann. § 29-20-311 (1980); Tenn. Code Ann. § 29-20-403(b)(2)(A) (Supp. 1998). In the instant case, the trial judge assessed the Plaintiffs' damages at $401,249.32 for the wrongful death of Walterine Crowder, $621,071.46 for the wrongful death of Deborah Hill, and $151,270.00 for the personal injuries of Amberly Hill. Applying the court's finding that the negligence of the Defendants was a thirty-five percent proximate cause of the Plaintiff's injuries, the court then reduced the amount of the Plaintiffs' damages to $140,437.26 for the wrongful death of Walterine Crowder, $217,375.01 for the wrongful death of Deborah Hill, and $52,944.50 for the personal injuries of Amberly Hill. Finally, because the amount of the Plaintiffs' damages for the wrongful deaths of Walterine Crowder and Deborah Hill exceeded the limits imposed by the Tennessee Governmental Tort Liability Act, the court further reduced the amount of the judgment, ultimately awarding the Plaintiffs $130,000.00 for the wrongful death of Walterine Crowder, $130,000.00 for the wrongful death of Deborah Hill, and $52,944.50 for the personal injuries of Amberly Hill.

On appeal, the Plaintiffs contend that the trial court should have rendered a judgment against Officer Cunningham to the extent that their damages exceed the caps imposed by the Tennessee Governmental Tort Liability Act. In support of this argument, the Plaintiffs rely on

section 29-20-310 of the Tennessee Code Annotated, which provides in pertinent part as follows:

> No claim may be brought against an employee or judgment entered against an employee for injury proximately caused by an act or omission of the employee within the scope of the employee's employment for which the governmental entity is immune in any amount in excess of the amounts established for governmental entities in § 29-20-403, *unless the act or omission was willful*, malicious, criminal, or performed for personal financial gain, or unless the act or omission was one of medical malpractice committed by a health care practitioner and the claim is brought against such health care practitioner.

Tenn. Code Ann. § 29-20-310(c) (Supp. 1998)(emphasis added).[5] Additionally, the Plaintiffs note the following statement made by the trial judge regarding the conduct of Officers Cunningham and Hardy:

> The Court concludes from the testimony of the witnesses that the police officers were involved in a high speed chase down Poplar Avenue on a Friday afternoon during rush hour traffic to apprehend a minor traffic violator. The Court also concludes from the testimony of Chief Alva Edwin Boatwright, Jr., that the officers violated the Germantown Police Department policy by engaging in such a high speed chase under the circumstances. The Court further concludes that the officers violated T.C.A. Section 55-8-108(d) by failing to use due care for the safety of others, and by failing to discontinue the pursuit when it became evident that the likelihood of injury to innocent third parties was foreseeable and greatly outweighed the potential benefit of apprehending the driver of a vehicle with an expired tag. *Under the circumstances of this case, these violations constitute wilful [sic] or wanton conduct or gross negligence*.

In ruling on the Plaintiffs' motion to alter or amend, the trial judge also stated as follows:

> I'm going to amend my judgment and I'm going to find as a fact in this case that Officer Chad Cunningham was guilty of gross negligence. He was guilty of willful and wanton conduct. . . . It was more than simple negligence. It was gross negligence . . . .

---

[5]The Defendants contend that, because the City of Germantown is not immune from suit under the Tennessee Governmental Tort Liability Act, section 29-20-310 of the Tennessee Code Annotated has no application to the case at bar. As authority for this proposition, the Defendants cite *Elmes v. Hart*, No. 03A01-9310-CV-00372, 1994 WL 228763 (Tenn. App. May 20, 1994), an unreported opinion of the eastern section of this court. We must note, however, that the Tennessee Supreme Court denied permission to appeal in *Elmes*, concurring in results only. Thus, because it has no precedential value, we are not required to follow the reasoning of *Elmes* when considering the applicability of section 29-20-310. *See Patton v. McHone*, 822 S.W.2d 608, 615 n.10 (Tenn. App. 1991)(citing *Clingan v. Vulcan Life Ins. Co.*, 694 S.W.2d 327, 331 (Tenn. App. 1987)).

I will also make the finding that Officer Hardy was guilty of simple negligence. He was not guilty of gross negligence. He told Officer Cunningham, in my view, to stop the chase, but Officer Cunningham didn't do that. Officer Hardy probably should have done more to remonstrate against and to order Officer Cunningham to stop the chase, but he didn't. That's simple negligence. It's not gross negligence.

The trial judge in the instant case used the word "willful" when describing the conduct of Officer Cunningham. The court further stated, however, that the actions of Officer Cunningham amounted to "gross negligence." We find these two characterizations to be incompatible. The word "willful" has been defined by this court as follows: "Proceeding from a conscious motion of the will; intending the result which actually comes to pass; intentional; not accidental or involuntary." *Claiborne and Hughes Convalescent Ctr. v. State, Dept. of Health*, 881 S.W.2d 671, 677 (Tenn. App. 1994). The phrase "gross negligence," on the other hand, has been defined by this court as "a conscious neglect of duty or a callous indifference to consequences. . . . [or] such entire want of care as would raise a presumption of a conscious indifference to consequences." *Buckner v. Varner*, 793 S.W.2d 939, 941 (Tenn. App. 1990)(quoting *Thomason v. Wayne County*, 611 S.W.2d 585, 587 (Tenn. App. 1980)). Under these definitions, we think the word "willful" and the phrase "gross negligence" are indicative of two distinct mental states and may not be used interchangeably.

Our review of the record in the instant case reveals no evidence suggesting that the conduct of Officer Cunningham was willful. He surely did not intend for his actions to result in an automobile accident in which two innocent persons were killed and a third innocent person was injured. On the contrary, the evidence suggests that the collision between the suspect's vehicle and the vehicle being driven by Walterine Crowder was unintentional and may be classified as an accident. There is ample evidence in the record, however, suggesting that Officer Cunningham knew that the Germantown Police Department had an informal policy against pursuing traffic offenders and further knew that, by engaging in a high speed chase down a busy thoroughfare in rush hour traffic, he was creating an unreasonable risk of harm to innocent third parties. Yet, Officer Cunningham disregarded police policy and his duty to innocent third parties, displaying a conscious indifference to the consequences of his actions. We thus find that the evidence overwhelmingly supports the conclusion that, although the conduct of Officer Cunningham may have amounted to

gross negligence, his actions were not willful. Accordingly, even assuming that section 20-29-310(c) of the Tennessee Code Annotated is applicable to the case at bar, we conclude that the trial court did not err in failing to enter a judgment against Officer Cunningham to the extent that the Plaintiffs' damages exceeded the limits imposed by the Tennessee Governmental Tort Liability Act.

### *Loss of Spousal and Parental Consortium*

At trial, the Plaintiffs sought loss of consortium damages for the wrongful deaths of Deborah Hill and Walterine Crowder. The trial judge, however, failed to award the Plaintiffs damages for loss of consortium, ruling that, under Tennessee law, such damages are not recoverable in a wrongful death case. We now consider whether, in light of our supreme court's recent decision of January 25, 1999 in *Jordan v. Baptist Three Rivers Hosp.*, No. 01S01-9706-CV-00142, 1999 WL 24677 (Tenn. Jan. 25, 1999),[6] the trial court erred in failing to award the Plaintiffs damages for loss of spousal and parental consortium.

Under Tennessee law, a cause of action for wrongful death is recognized by statute. *See* Tenn. Code Ann. §§ 20-5-101 to -120 (1994 & Supp. 1998). The types of damages that are recoverable in a wrongful death case are outlined in section 20-5-113 of the Tennessee Code Annotated which provides as follows:

> Where a person's death is caused by the wrongful act, fault, or omission of another, and suit is brought for damages, as provided for by §§ 20-5-106 and 20-5-107, the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.

Tenn. Code Ann. § 20-5-113 (1994). Tennessee courts have classified this provision as a survival statute because it vests in a designated survivor whatever cause of action the injured party had against the defendant prior to his or her death. *See Milligan v. American Hoist & Derrick Co.*, 622 F.Supp. 56, 59 (W.D. Tenn. 1985); *Jones v. Black*, 539 S.W.2d 123, 124 (Tenn. 1976).

---

[6]This case has been designated for publication.

Additionally, the courts of this state have repeatedly rejected the notion that section 20-5-113 creates a new cause of action in favor of the injured party's survivors for their loss resulting from the injured party's death. *See Jamison v. Memphis Transit Management Co.*, 381 F.2d 670, 673 (6th Cir. 1967); *Harmon v. Wolfe*, 253 F. Supp. 577, 578 (E.D. Tenn. 1965); *Jones*, 539 S.W.2d at 124; *Southeastern Aviation, Inc. v. Hurd*, 355 S.W.2d 436, 442 (Tenn. 1962); *Logan v. Reaves*, 354 S.W.2d 789, 790 (Tenn. 1962); *Herrell v. Haney*, 341 S.W.2d 574, 576 (Tenn. 1960); *Memphis St. Ry. Co. v. Cooper*, 313 S.W.2d 444, 447-48 (Tenn. 1958); *Love v. Southern Ry. Co.*, 65 S.W. 475, 480 (Tenn. 1901); *Whaley v. Catlett*, 53 S.W. 131, 133 (Tenn. 1899); *Rogers v. Donelson-Hermitage Chamber of Commerce*, 807 S.W.2d 242, 245 (Tenn. App. 1990).

In *Davidson Benedict Co. v. Severson*, 72 S.W. 967 (Tenn. 1903), our supreme court held that survivors could not recover consortium-type damages under Tennessee's wrongful death statutes. *See id.* at 982 (stating that "nothing can be allowed . . . for the loss of the aid, comfort, counsel, and companionship of the deceased"). *See also Louisville & N.R. Co. v. Tucker*, 211 F.2d 325, 333 (6th Cir. 1954); *Knight v. Nurseryman Supply, Inc.*, 248 F. Supp. 925, 926 (E.D. Tenn. 1965); *Illinois Cent. R. Co. v. Bentz*, 69 S.W. 317, 320 (Tenn. 1902). Nearly one hundred years later, the Tennessee Supreme Court revisited this holding in the recent case of *Jordan v. Baptist Three Rivers Hosp.* The court in *Jordan* focused on the plain language of section 20-5-113. *See Jordan,* 1999 WL 24677, at *6. The court noted that, despite its classification as a survival statute, section 20-5-113 also provides for a cause of action that compensates survivors for incidental damages sustained as a result of the injured party's death. *See id.* at *6-7 (citing *Thrailkill v. Patterson*, 879 S.W.2d 836, 841 (Tenn. 1994); *Davidson Benedict Co.*, 72 S.W. at 977). Incidental damages, as noted by the court, have been defined to include the pecuniary value of the decedent's life which is calculated by considering the injured party's age, life expectancy, condition of health and strength, earning capacity, and personal habits as to sobriety and industry. *See id.* at *7 (citing *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 943 (Tenn. 1994)). The court recognized that the pecuniary value of human life necessarily encompasses the value of human companionship. *See id.* Accordingly, the court interpreted section 20-5-113 as allowing the survivor to recover damages for the loss of human companionship resulting from the injured party's death and reversed its earlier ruling in *Davidson Benedict Co.* to the extent that it prohibited the recovery of damages for spousal consortium in wrongful death cases. *See id.*

The court in *Jordan* next considered whether, under Tennessee's wrongful death statutes, a child of the injured party could recover damages for loss of parental consortium. *See id.* at *8. The court first noted that section 20-5-110 of the Tennessee Code Annotated provides that an action for wrongful death may be brought "for the benefit of the surviving spouse and the children of the deceased." *Id.* (quoting Tenn. Code Ann. § 20-5-110 (1994)). The court concluded that, when read in conjunction with section 20-5-110, section 20-5-113 "seemingly permits consideration of parental consortium damages." *Id.* (citing *Fosters v. Jeffers*, 813 S.W.2d 449, 451 (Tenn. App. 1991)). Noting that many other jurisdictions allow the child of a tortiously killed parent to recover consortium-type damages, the court held that such damages are also recoverable under section 20-5-113 as part the pecuniary value of the deceased parent's life. *See id.* at *8-9.

We must now consider whether the holding of *Jordan* may be applied retrospectively to the case at bar. The Tennessee Constitution provides "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made." Tenn. Const. art. I, § 20. This provision has been interpreted as prohibiting the retrospective application of a statute if such application would disturb a vested substantive right derived from the common law. *See Dupuis v. Hand*, 814 S.W.2d 340, 343 (Tenn. 1991); *Hanover v. Ruch*, 809 S.W.2d 893, 896 (Tenn. 1991); *Miller v. Sohns*, 464 S.W.2d 824, 826 (Tenn. 1971); *Massey v. Sullivan County*, 464 S.W.2d 548, 549 (Tenn. 1971). This prohibition does not, however, prevent the retroactive application of judicial changes in the common law. *See Dupuis*, 814 S.W.2d at 343; *Davis v. Davis*, 657 S.W.2d 753, 759 (Tenn. 1983). *See also Alcazar v. Hayes*, 982 S.W.2d 845, 856 (Tenn. 1998); *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 905 (Tenn. 1996); *Perez v. McConkey*, 872 S.W.2d 897, 906 (Tenn. 1994); *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992) (directing that the common law changes contained in those opinions were to be applied retrospectively to any cases on appeal in which the issue was properly raised in the trial court).

In *Jordan*, the court's ruling did not result in a change in the common law. Rather, *Jordan* involved the judicial construction of a statute. A change in the judicial construction of a statute becomes a part of the statute itself and thus has the same effect as a change in the law by legislation. *See Blank v. Olsen*, 662 S.W.2d 324, 326 (Tenn. 1983)(citations omitted). Consequently, many courts have endorsed the position that a change in the judicial construction of

a statute should not be applied retrospectively. *See id.* (citations omitted). In *Blank v. Olsen*, 662 S.W.2d 324 (Tenn. 1983), our supreme court stated as follows:

> There is nothing said in *Pierce* indicating it is to have retrospective effect, and in the absence of such an expressed intent the rule is . . . that the decision overruling a judicial construction of a statute will not be given retroactive effect.

*Id.* at 325. Applying this rule to the case at bar, we think it is significant that, unlike *Alcazar, McClung, Perez,* and *McIntyre*, there is no language in *Jordan* providing for retrospective application. Absent such an expressed intent, we must conclude that the *Jordan* court's new construction of Tennessee's wrongful death statutes may not be applied retrospectively. We believe it is significant that the opinion in *Jordan*, unlike *McIntyre, McClung* and *Perez*, did not provide for retrospective application.

Thus, in the instant case, we must review the ruling of the trial court under the law in existence at the time of trial. Prior to *Jordan*, the courts of this state uniformly held that damages for loss of consortium were not recoverable under Tennessee's wrongful death statutes. We must conclude then, that the trial judge was correct, under the then existing law, in ruling that the Plaintiffs could not recover consortium-type damages for the wrongful deaths of Deborah Hill and Walterine Crowder.

### *Damages of Amberly Hill*

The trial court found that Amberly Hill had suffered a total of $151,270.00 in damages as a result of the accident. The Defendants argue on appeal that this amount is excessive and should be substantially reduced. Specifically, the Defendants contend that the trial court's assessment of Amberly's damages relies on proof of emotional injuries associated with the loss of Amberly's mother. As we stated above, the trial court properly held that the Plaintiffs were not entitled to recover damages for loss of spousal or parental consortium.

Amberly, who was twenty-eight months old at the time of the accident, was riding

as a passenger in the vehicle that was struck by the vehicle being pursued by Officers Cunningham and Hardy. One eyewitness described the accident scene as "gruesome" and stated that Deborah Hill was "kind of hanging out the front window." Because Amberly was found conscious and crying at the scene, we may presume that she observed the injuries of her mother and Walterine Crowder. A firefighter had to break a window in order to remove Amberly from the vehicle. According to Amberly's medical records, she was treated for fragments of glass in her scalp, a small laceration to her left eyebrow, a small abrasion to her inner lower lip, and a laceration over her right eye. Amberly's father testified that, following the accident, Amberly started waking up in the middle of the night crying. Additionally, Amberly would jump out of her car seat whenever she heard the siren of a police car or fire truck. Amberly was seen by a psychiatrist, who concluded that Amberly was suffering from post-traumatic stress syndrome.

In *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996), the Tennessee Supreme Court abandoned the physical manifestation or injury rule and adopted a general negligence approach to claims of negligent infliction of emotional distress. *See id.* at 446. Under this approach, the plaintiff may recover only if the defendant's conduct was negligent and, as a result of the defendant's negligence, the plaintiff sustained a serious or severe emotional injury. *See id.* The court noted in *Camper* that it was not necessarily abandoning the zone of danger test, stating as follows: "[S]ince the "zone of danger" approach is, in reality, merely a way of defining and limiting the elements of duty and proximate or legal cause, the principles of the approach can likely be integrated into the general negligence framework." *Id.* at 446 n.2. In *Ramsey v. Beavers*, 931 S.W.2d 527 (Tenn. 1996),[7] the court attempted to explain the operation of the zone of danger test within the context of the general negligence approach. The court held in *Ramsey* that, in order to recover for emotional injuries sustained as a result of the injuries of a third person, the plaintiff must prove that the defendant's conduct was a cause in fact of both the third party's injury and the plaintiff's emotional injury. *See id.* at 531. Additionally, the plaintiff must prove that his or her emotional injury was

---

[7]The Defendants contend that the Plaintiffs did not seek to recover under *Ramsey* at trial and thus have waived the right to recover damages for negligent infliction of emotional distress. We disagree. The Plaintiffs' complaint specifically states that Amberly is seeking damages for "[f]right, shock, fear and apprehension for the well-being of her mother as a result of the accident proximately caused by being in the foreseeable zone of danger created by the Defendant's negligence." Because we think that this language is sufficient to allege negligent infliction of emotional distress, we find no waiver of this theory of recovery.

the foreseeable result of the defendant's conduct. **See id.** In order to establish foreseeability, the plaintiff must prove (1) that he or she was close enough to make a sensory observation of the injury-producing event, (2) that the injury to the third party was, or was reasonably perceived to be, serious or fatal, and (3) that he or she shares a close relationship with the injured third party. **See id.**

In the instant case, there is ample evidence that, but for the conduct of the Defendants, the fleeing suspect would not have crashed into the vehicle being driven by Walterine Crowder. Because there is no dispute that Amberly's emotional injuries are directly related to this accident, we think that the Defendants' conduct was also a cause in fact of these injuries. With respect to the foreseeability of Amberly's emotional injuries, we note that Amberly was inside the Crowder vehicle when the accident occurred and thus was close enough to make a sensory observation of the injury causing event. Additionally, the injuries to Deborah Hill and Walterine Crowder were fatal. Finally, we note that Amberly shared a close familial relationship with both Deborah Hill and Walterine Crowder.[8] We thus conclude that the elements set forth in **Ramsey** are satisfied in the case at bar. Accordingly, in assessing Amberly's damages, the trial court could have considered the extent to which Amberly suffered emotional injuries as a result of witnessing the fatal injuries of Deborah Hill and Walterine Crowder.

The trial court found that Amberly had sustained a total of $150,000.00 in damages as a result of her pain, suffering, fear, and anxiety. There are no mathematical rules or formulas for computing damages in personal injury cases. **See, e.g., Brown v. Null**, 863 S.W.2d 425, 429-30 (Tenn. App. 1993). In such cases, the trier of fact is afforded a great deal of discretion with respect to its assessment of damages. **See, e.g., Coakley v. Daniels**, 840 S.W.2d 367, 372 (Tenn. App. 1992). In light of our discussion above, we cannot say that the evidence preponderates against the trial court's finding with respect to Amberly's damages. Accordingly, we decline the Defendants' invitation to reduce the amount of Amberly's damages on appeal.

### *Discretionary Costs*

---

[8]Walterine Crowder was Amberly's aunt.

The trial court awarded the Plaintiffs a total of $25,588.52 in discretionary costs, including $4,514.00 for the expert witness fee of Michael Cosgrove and $5,203.25 for the expert witness fee of Dr. Geoffrey E. Alpert. On appeal, the Defendants first contend the request for the expert witness fee of Dr. Alpert should not have been allowed because the testimony offered by Dr. Alpert was cumulative. Under the Tennessee Rules of Civil Procedure, discretionary costs include "reasonable and necessary court reporter expenses for depositions or trials, *reasonable and necessary expert witness fees for depositions or trials*, and guardian ad litem fees." T.R.C.P. 54.04(2)(emphasis added). In ruling on the Plaintiffs' motion for discretionary costs, the trial court stated as follows:

> The sworn bill of costs filed by both plaintiffs in this case seem to be reasonable and in order. And as far as the experts are concerned, they were helpful to the Court in this case in determining, if nothing else -- you know, with Mr. Alpert, for example, he seemed to know what he was talking about and seemed to be very well qualified in looking at these cases and statistics and that sort of thing and testifying to the Court about in all probability what would have happened if the police officers had in fact stopped the chase, turned off their blue lights and turned off their sirens and stopped chasing. . . . So I think all of these expenses are reasonable and in line and I will award all of these expenses requested as discretionary costs.

The trial judge apparently did not believe that the testimony of Dr. Alpert was cumulative and unnecessary. Thus, we disagree with the Defendants' contention that the trial judge should have disallowed the fees of Dr. Alpert.

The Defendants next argue that, because the Plaintiffs' constitutional claim was unsuccessful, the trial court should have awarded only a portion of the Plaintiffs' expert witness fees.[9] We disagree. The testimony offered by the Plaintiffs' expert witnesses was relevant to the

---

[9]In support of this proposition, the Defendants cite *Duncan v. DeMoss*, 880 S.W.2d 388 (Tenn. App. 1994). In *Duncan*, we held that the trial court could not award as discretionary costs the fees of an attorney who testified in a will contest in his capacity as the executor of the decedent's estate. *See id.* at 390. We made no finding in *Duncan*, nor is any issue raised in *Duncan*, that has any relevance to the case at bar. Thus, the Defendants' reliance on this case is misplaced. Additionally, the Defendants cite *Farrar v. Hobby*, 506 U.S. 103 (1992), wherein the United States Supreme Court held that, when awarding attorney's fees to a prevailing party under 42 U.S.C. § 1988, the court should consider the amount and nature of the prevailing party's recovery. *See id.* at 114. The question in *Farrar* involved the awarding of attorney fees under a federal statute. In the instant case, however, the issue is one of discretionary costs. Thus, we think that *Farrar* is similarly irrelevant to our discussion of discretionary costs in the case at bar.

Plaintiffs' claims based on the theories of common law negligence and negligence per se as well as the Plaintiffs' constitutional claim. While we certainly agree that the trial court, in its discretion, could have considered the failure of the Plaintiffs' constitutional claim when apportioning costs, we have found no rule under Tennessee law requiring the court to do so. Thus, we find no error in the trial judge's failure to reduce the amount of the Plaintiffs' discretionary costs to reflect that the Plaintiffs did not prevail with respect to their constitutional claim.

Finally, the Defendants claim that, because the trial court found that they were only thirty-five percent at fault, the court erred in requiring them to pay the entire amount of the award for discretionary costs. In *Hollifield v. City of Morristown*, No. 03A01-9605-CV-00172, 1996 WL 539766 (Tenn. App. Sept. 25, 1996), we expressly rejected the contention that, in comparative fault cases, costs must be assessed according to the party's degree of fault. *See id.* at *2. Thus, we also find this argument of the Defendants to be without merit.

As the name suggests, trial judges are afforded a great deal of discretion when considering a motion for discretionary costs. Absent a clear abuse of discretion, appellate courts generally will not interfere with a trial court's assessment of costs. *See, e.g., Perdue v. Green Branch Mining Co.*, 837 S.W.2d 56, 60 (Tenn. 1992). Because we find no abuse of discretion in the instant case, we conclude that the trial court did not err in awarding the Plaintiffs a total of $25,588.52 in discretionary costs or in apportioning 100% of these costs against the Defendants.

### *Conclusion*

For the reasons set forth above, the ruling of the trial court is affirmed in all respects. Costs on appeal are charged to the Plaintiffs, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

HIGHERS, J. (Concurs)