Cindy L. SPENCER, as next friend and guardian of James Cody Spencer, a minor, Plaintiff–Appellee,

v.

A–1 CRANE SERVICE, INC. and Diamond Steel Construction Company of Tennessee, Inc., Defendants–Appellants.

Supreme Court of Tennessee,
at Jackson.

June 20, 1994.

James D. Causey, Memphis, for appellant, A–1 Crane Service.

Gary K. Smith and Bruce E. Williams, Shuttleworth, Smith, McNabb & Williams, Memphis, for appellant, Diamond Steel Const. Co.

Ronald D. Krelstein, Memphis, for appellee, Cindy Spencer.

## *OPINION*

ANDERSON, Justice.

In this wrongful death appeal arising out of a building construction accident, the question presented is whether the Court of Appeals was correct when it reversed a trial court judgment in favor of a defendant contractor and granted a new trial because of an *ex parte* communication between the trial court and the jury foreman. The Court of Appeals' decision that the trial court did not err in its jury instructions as to hedonic damages and the taxability of any damage award is also questioned.

Because we conclude that no specific prejudice resulted from the *ex parte* communication, we reverse the Court of Appeals and reinstate the jury verdict. With respect to the other issues raised, the Court of Appeals is affirmed.

## *BACKGROUND*

This wrongful death action arose from a construction accident in which James J. Spencer was killed. At the time of his death, Spencer was employed by a subcontractor who was providing labor in connection with the construction and installation of concrete panels in several "tilt-up" buildings that were to become part of the Outland Business Center in Memphis.

The defendant, Diamond Steel Company of Tennessee, Inc., ("Diamond"), was responsible for the steel work on the project, including the installation and removal of temporary braces for the concrete wall panels, and the defendant, A–1 Crane Service Inc. ("A–1 Crane"), was engaged in hauling debris from the project.

On the day of Spencer's death, an employee of A–1 Crane was operating a backhoe inside a building at the project when he struck one of the primary structural steel columns, which caused the steel column to bend and the roof to collapse, which in turn caused a tilt-up concrete wall panel to fall on Spencer who was working outside the building.

The plaintiff widow filed a complaint against A–1 Crane seeking damages based on the negligence of its backhoe operator and against Diamond Steel based on its negligence in the removal of the temporary braces supporting the concrete wall panel. A cross-claim for contribution and indemnity was also filed by A–1 Crane against Diamond Steel.

The entire case was tried for four weeks. At the end of the plaintiff's proof, the trial court granted plaintiff a directed verdict against A–1 Crane on the issue of liability. As to A–1 Crane, the trial court submitted the issue of damages to the jury, and as to Diamond Steel, both liability and damages were submitted for jury decision. The trial court denied A–1 Crane's special request for a jury instruction that any award given the plaintiff would not be subject to income tax; and also denied plaintiff's request for a jury instruction that an element of damages for wrongful death is hedonic damages—"the value of the pleasure, the satisfaction or the utility that human beings derive from life, separate and apart from labor or earnings value of life."

The jury returned a verdict for the plaintiff in the amount of one million dollars ($1,000,000) in damages against A–1 Crane, but found in favor of Diamond Steel. Thereafter, A–1 Crane filed a motion for new trial which included the following allegation of error:

> The Court erred in communicating with members of the jury outside the presence of the entire jury and outside the courtroom and outside the presence of counsel.

James Causey, attorney for A–1 Crane, and Gary Smith, attorney for Diamond Steel, filed affidavits that set forth in more detail the circumstances of the alleged error. Essentially, the affidavits alleged that on the first day of jury deliberations, Gary Smith observed the trial judge speaking with the jury foreman outside the jury room, and when he asked the trial judge about the

conversation, he was told that the jury wanted to go home at 4:00 p.m.

After the verdict was announced, Smith said that the trial judge called him to the bench, commented that he was "lucky," and then said that the jury foreman had told him, the trial judge, that the jury wanted to pro rate the damages and hold both defendants liable. The trial judge stated that he told the foreman that the jury could not pro rate damages but must determine who was liable and assess damages. Causey, at that point, walked up to the bench and the trial judge, upon request from Smith, repeated his comments in Causey's presence.

Causey's affidavit confirms Smith's statement about the exchange at the bench, and also reflects that Causey later spoke with the jury foreman who admitted that he asked the trial judge if they, the jury, could have majority rule and assign so much to each defendant. The affidavit does not reflect the foreman's recollection of the answer given, but concludes merely with the general statement that the judge answered the question out of the presence of the other jurors and the lawyers.

At the hearing on A–1 Crane's motion for a new trial, the trial judge specifically addressed the *ex parte* communication issue stating:

> Now on this thing about the communication with the juror, first of all I think that we should let this record accurately reflect that we didn't sit down and have an extended conversation and that my communication lasted about five or six seconds at which time the jury foreman asked me if they could assess a certain amount of damages against one defendant and then another amount against another, and I said no, that they had to come back with just one verdict. And they also asked me how long would they be going on and would they leave at 4:00, and I said that they could not.
>
> After the jury had returned its verdict and the jury had been excused, I also told Mr. Smith that I thought that he was lucky, and I meant and I still mean that if a client, if a lawyer represents a client and he comes out with a favorable judgment, in my opinion he is lucky because you never know what a jury is going to do.
>
> Very frankly I thought they were going to come back with a judgment against both defendants and when I saw it was against one, I told Mr. Smith that he was lucky. I don't think that the grounds, I have carefully considered all the grounds in your motion, and I think that it preponderates in favor of the jury verdict, and I feel the grounds are not only not well taken but are totally absurd, and I'm going to overrule the motion for a new trial. . . .

A–1 Crane appealed, challenging the trial court's denial of its motion for new trial. The Court of Appeals affirmed the trial court's judgment for the plaintiff against A–1 Crane, but reversed the trial court's judgments in favor of Diamond Steel with respect to the plaintiff's claim and A–1 Crane's cross-claim based on the *ex parte* communication between the trial court judge and the jury foreman.

Both Diamond Steel and A–1 Crane filed applications for permission to appeal, which were granted by this Court. Diamond Steel contends, and the plaintiff agrees, that the *ex parte* communication was harmless error because no specific prejudice has been shown, and that the Court of Appeals erred in reversing the judgment of the trial court. On the other hand, A–1 Crane contends that the error was prejudicial, and that the Court of Appeals should have granted a new trial as to all parties. We agree that it was error for the trial judge to engage in an *ex parte* communication with the jury foreman; however, we reverse the Court of Appeals' judgment and reinstate the judgment of the trial court because the record contains no showing of specific prejudice as a result of the error. With respect to the alleged instructional errors and the denial of pre-judgment interest, the Court of Appeals' judgment is affirmed.

### EX PARTE COMMUNICATION

■ The analytical framework for determining whether reversal is required in a civil case due to a trial judge's *ex parte* communication with a jury or juror was enunciated in *Guy v. Vieth*, 754 S.W.2d 601 (Tenn.1988).

In *Guy*, affidavits in support of a motion for new trial were to the effect that during the deliberations, the jurors had informed the bailiff that they had a question. Without the lawyers or a court reporter accompanying him, the trial judge entered the jury room alone, closed the door, and remained in the room for approximately two minutes. When emerging from the jury room, the trial judge stated that the jury wanted to go to lunch, and the jurors then went to lunch. After recognizing that some courts consider *ex parte* communications between judge and jury or juror reversible error regardless of prejudice, this Court stated:

> The best position seems to us to be that a trial judge's *ex parte* communication with a jury in a civil case does not require reversal per se, but reversal is required where a *timely* complaining party shows specific prejudice or where, owing to the nature of the *ex parte* communication, the reviewing court is unable to determine whether the action was actually harmless.

*Id.* at 605 (emphasis in original). Applying that rule, this Court commented that the *ex parte* communication concerned administrative matters, specifically the excusing of the jury for lunch, but in any event, held that the issue had been waived because no timely objection was entered.

The rule announced in *Guy* remains workable and sound. Moreover, it is re-enforced by Tennessee Rule of Appellate Procedure 36(b) which provides:

> A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

Accordingly, the determinative question is whether A–1 Crane demonstrated specific prejudice, either to its substantial rights or to the judicial process.[1] Because of the nature of the communication herein, A–1

Crane, had the opportunity to demonstrate whether or not specific prejudice resulted.

■ At the time A–1 Crane's attorney learned of the full nature of the *ex parte* communication shortly after the verdict was announced, according to his own affidavit, no objection was entered. There is no evidence in the record by way of affidavit or otherwise to indicate that the communication tainted or played any role whatsoever in the deliberative process of the jury. Even though Tennessee Rule of Evidence 606(b) allows inquiries of jurors regarding extraneous or outside influences that may have affected the verdict, no such inquiry was held. Likewise, Causey's affidavit about his conversation with the jury foreman does not indicate that the *ex parte* communication was relayed to the entire jury panel, or that it influenced the foreman individually. Moreover, A–1 Crane does not claim that the response given by the trial judge was a misstatement of the law as it existed at the time of trial. As a result, we conclude A–1 Crane has demonstrated no specific prejudice as a result of the *ex parte* communication.

■ Of course, the only proper response by a trial judge to a question from the jury or an individual juror is to recall the jury, counsel, and parties into open court, hear the question, reinstruct the jury on the portion of the charge that responds to the question, if necessary, and make clear that the repeated instruction should not be considered as emphasis of that portion of the charge. *Smythe v. Easy Quick Stores, Inc.*, 754 S.W.2d 57 (Tenn.App.1988).

We reiterate that the rule announced in *Guy* and reaffirmed here should not in any way be interpreted as an endorsement of *ex parte* communications between trial judges and juries or individual jurors. Such communication is always error and should not occur under any circumstances. We only reject a *per se* rule of reversal for that error. Reversal is appropriate, and indeed required, in situations where the complaining party

---

1. We note at this juncture that A–1 Crane has cited in its brief a number of criminal cases discussing harmless and prejudicial error; however, constitutional error was involved in those cases. In that context, the burden is on the

State, not the party alleging error, to show that the error was harmless beyond a reasonable doubt. When nonconstitutional error is at issue, the standard of Rule 36(b) applies, and the burden is on the party claiming error.

demonstrates specific prejudice, or where the nature of the communication makes it impossible for the reviewing court to determine whether the action was actually harmless.

In this case, having found no evidence of specific prejudice in the record, we conclude the error was harmless. Accordingly, the Court of Appeals' judgment as to this issue is reversed. The other issues raised by Diamond Steel, therefore, are pretermitted; however, we address below the additional issues raised by A–1 Crane and the plaintiff.

### NONTAXABILITY INSTRUCTION

■ A–1 Crane claims that the Court of Appeals erred in affirming the trial court's refusal to charge the jury in accordance with the following special request it submitted:

I charge you, as a matter of law, that any award made to the plaintiff in this case, if any is made, will not be subject to income taxes, and that you should not consider such taxes in fixing the amount of the award.

A–1 Crane says that the nontaxable charge requested was necessary to prevent the jury from artificially inflating the award to compensate for what it anticipated would be the possible effects of taxation. We disagree.

In *Dixie Feed & Seed Co. v. Byrd*, 52 Tenn.App. 619, 376 S.W.2d 745 (1963), a personal injury action, the Court of Appeals concluded that it is not error for a trial court to refuse to instruct the jury that an award is not subject to income taxation. In so holding, the court stated that such an instruction would

inject into the already difficult and complicated computation of such damages factors which change from time to time, such as the rate of taxation and the number of plaintiff's exemptions, and allowed [sic] juries to indulge in speculation and conjecture in arriving at the amount to be deducted.

*Id.*, 376 S.W.2d at 749. In *Stallcup v. Taylor*, 62 Tenn.App. 407, 463 S.W.2d 416, 422 (1970), the holding in *Dixie Feed & Seed Co.* was applied in a wrongful death action to affirm the refusal of the trial court to charge the jury that the recovery would not be subject to income tax.

Our research reveals that our intermediate appellate court decisions are consistent with the majority rule followed in other jurisdictions. *See generally,* John E. Theuman, Annotation, *Propriety of Taking Income Tax Into Consideration in Fixing Damages in Personal Injury or Death Action,* 16 A.L.R.4th 589 (1982 & Supp.1993). Three primary reasons have been advanced to support the majority rule: first, requiring a nontaxability instruction would open a "Pandora's box," requiring charges to the jury on a variety of matters; second, such an instruction requires a court to assume that jurors will not confine themselves to the evidence or the instructions given; and third, a nontaxability instruction injects an extraneous, collateral issue into jury deliberations, potentially leading a jury into confusion, speculation, and conjecture over the effect of taxes or lack thereof. *See Stover v. Lakeland Square Owners Ass'n,* 434 N.W.2d 866 (Iowa 1989) (citing cases).

The minority rationale, exemplified by *Norfolk & Western Railway Co. v. Liepelt,* a United States Supreme Court decision requiring that such instructions be given in Federal Employers Liability Act (F.E.L.A.) cases, also consists of three parts. *Id.* 444 U.S. 490, 498, 100 S.Ct. 755, 759, 62 L.Ed.2d 689, 696 (1980). First, such an instruction is considered to be harmless as it is brief and easily understood, and can help by preventing an artificial inflation; second, giving a nontaxability instruction would require no additional instructions; and third, consideration of tax effects would be no more speculative than other matters already considered by juries, such as future inflation and future health. *See id.* at 494–98, 100 S.Ct. at 757–59.

Upon consideration of the rationale and authority supporting both views, we are convinced that the majority view as adopted in *Dixie Feed & Seed Co.* is the more persuasive and remains sound, and should continue to be applied in this State. Accordingly, the judgment of the Court of Appeals is affirmed.

## HEDONIC DAMAGES INSTRUCTION

■ The plaintiff contends that the trial court should have given the jury a special request on the issue of hedonic damages. The instruction submitted by the plaintiff stated, in part, that "the hedonic value of life refers to the value of the pleasure, the satisfaction or the utility that human beings derive from life, separate and apart from the labor or earnings value of life."

Although it appears that federal courts have been willing to allow recovery for hedonic damages in civil rights claims for wrongful death, only Connecticut, among all the states, has held that hedonic damages are recoverable under a state wrongful death statute. *See Sherrod v. Berry,* 629 F.Supp. 159 (N.D.Ill.1985), *rev'd* on other grounds, 856 F.2d 802 (7th Cir.1988); *Katsetos v. Nolan,* 170 Conn. 637, 368 A.2d 172, 184 (1976); *but see contra Willinger v. Mercy Catholic Med. Ctr. of Southeastern Pennsylvania,* 482 Pa. 441, 393 A.2d 1188, 1190 (1978); *Wooldridge v. Woolett,* 96 Wash.2d 659, 638 P.2d 566, 569 (1981) (En Banc); *Southlake Limousine and Coach, Inc. v. Brock,* 578 N.E.2d 677, 680 (Ind.App.1991); *Livingston v. United States,* 817 F.Supp. 601 (E.D.N.C.1993) (hedonic damages not available under North Carolina law); *Simmons v. Hartford Ins. Co.,* 786 F.Supp. 574, 576 (E.D.La.1992) (hedonic damages not available under Louisiana law); *Ortega v. Plexco, a Div. of Chevron Chemical Corp.,* 793 F.Supp. 298, 299 (D.N.M.1991) (hedonic damages not available under New Mexico law); *Nichols v. Estabrook,* 741 F.Supp. 325, 328 (D.N.H.1989) (hedonic damages not available under New Hampshire law). As a result, some commentators have recognized that it is unlikely that hedonic damage claims will be adopted. Andrew Jay McClurg, *It's a Wonderful Life: The Case for Hedonic Damages in Wrongful Death Cases,* 66 Notre Dame L.Rev. 57, 91 (1990); 2 Dan B. Dobbs, *Dobbs Law of Remedies,* § 8.3(5), pp. 443–45 (1993).

Two general rationales have been identified as reasons for denying hedonic damage claims: first, awarding hedonic damages does not fulfill the compensatory function of tort law; and second, valuing the pleasures of life is too speculative to form a basis for computing damages. *See id.,* 66 Notre Dame L.Rev. at 66. In *Sherrod v. Berry, supra,* the leading federal case allowing hedonic damages, the court responded to those two arguments by concluding that loss of life includes the deprivation of the pleasures of life, and by observing that the expert testimony admitted to establish the hedonic damage claim was not overly speculative because only the measure or extent of the injury, and not the cause, was uncertain. 629 F.Supp. at 163–64. Moreover, the *Sherrod* court pointed out that hedonic damage claims have been awarded in England since 1976.

As the Court of Appeals recognized, consideration of this issue in Tennessee must necessarily begin with Tenn.Code Ann. § 20–5–113 (1980), which provides:

> Where a person's death is caused by the wrongful act, fault, or omission of another, and suit is brought for damages, as provided by §§ 20–5–106 and 20–5–107, the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.

The recovery for wrongful death in Tennessee has long been based upon the pecuniary value of the life of the deceased, which is to be determined upon consideration of the expectancy of life, the age, condition of health and strength, capacity for labor and for earning money through skill, any art, trade, profession, occupation or business, and personal habits as to sobriety and industry. *Memphis St. Ry. Co. v. Cooper,* 203 Tenn. 425, 313 S.W.2d 444 (1958); *Hensley v. Harbin,* 782 S.W.2d 480, 481 (Tenn.App.1989). We agree with the Court of Appeals' conclusion that allowing claims for hedonic damages would be contrary to the statute and well-established precedent. *See also* 66 Notre Dame L.Rev. at 95 ("Among the loss to the estate states, only the Tennessee statute appears to absolutely preclude the recovery of hedonic damages."). Moreover, the reasons offered by the *Sherrod* court in support of awarding such damages are not persuasive, particular-

**944**

ly in the context of actions brought under state wrongful death statutes. The judgment of the Court of Appeals is consistent with the language of the wrongful death statute, follows the majority view of other states considering the issue, and is the better reasoned and more persuasive rule. It is, therefore, affirmed.

### DENIAL OF PRE–JUDGMENT INTEREST

Finally, the plaintiff asks that we overrule the judgment of the Court of Appeals and award pre-judgment interest. Tenn.Code Ann. § 47–14–123 (1988) provides that pre-judgment interest "may be awarded by courts or juries in accordance with the principles of equity...." The award of pre-judgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992); *see also Kirksey v. Overton Pub., Inc.*, 804 S.W.2d 68, 73 (Tenn.App.1990) (applying that standard to a wrongful death action); *see generally* 2 Dan B. Dobbs, *Dobbs Law of Remedies*, § 8.3(6), p. 446 (1993). Our examination of the record in this case does not reveal an abuse of discretion on the part of the trial court. Accordingly, the Court of Appeals' judgment is affirmed.

### CONCLUSION

Because we conclude that A–1 Crane failed to demonstrate that specific prejudice resulted from the *ex parte* communication between the trial judge and the jury foreman, the judgment of the Court of Appeals reversing the trial court's judgment in favor of Diamond Steel is reversed, and the judgment of the trial court is reinstated. In all other respects, the judgment of the Court of Appeals is affirmed. Costs of this appeal are taxed to the appellant, A–1 Crane Service, Inc.

REID, C.J., and DROWOTA, O'BRIEN and BIRCH, JJ., concur.