# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 13, 2001 Session

### ARVIL A. HOLT, ET AL. v. ZULA HOLT PARTON

**Appeal from the Circuit Court for Sevier County**
**No. 94-1274-I      Ben. W. Hooper, II, Judge**

---

**FILED AUGUST 29, 2001**

**No. E2000-02695-COA-R3-CV**

---

Arvil A. Holt and Beulah Holt Jones ("Plaintiffs") filed this will contest against one of their sisters, Zula Holt Parton ("Defendant"), regarding their Mother's will ("Will"). The case was tried by a jury. During the second day of the jury's deliberations, the Trial Court engaged in *ex parte* communications with the jury regarding their answers to special interrogatories in a "Special Verdict Form" and their apparent deadlock on the general verdict. The jury foreperson indicated on two occasions that the jury would like to deliberate further. Over objection of Defendant's counsel, however, the Trial Court did not allow for further jury deliberations and entered its judgment. Defendant appeals. We vacate and remand.

### Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court
### Vacated and Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Carl W. Eshbaugh and Jonathan A. Moffatt, Knoxville, Tennessee, for the Appellant, Zula Holt Parton.

Charles I. Poole, Sevierville, Tennessee, for the Appellees, Arvil A. Holt and Beulah Holt Jones.

# OPINION

## Background

The parties' mother, Nora Holt, executed a Will on September 30, 1988, and died on December 29, 1992. Plaintiffs, brother and sister, filed a Complaint to Contest Will against Defendant, one of their sisters, regarding their mother's Will. Plaintiffs did not name their other sister, Janice Davis, as a party in their Complaint. Plaintiffs alleged in their Complaint that due to mental and physical disabilities, Nora Holt did not have the requisite testamentary capacity to execute her Will and that the Will was the result of undue influence of Defendant. Defendant denied these allegations in her Answer.

Although neither party requested a jury, the Trial Court decided *sua sponte* that a jury should hear this case. The trial, which took approximately three days, was held in April 1999. The jury was provided a form captioned "Special Verdict Form." The Special Verdict Form included a series of special interrogatories which stated, in pertinent part, as follows:

> Please answer the following questions by circling "**yes**" or "**no**." All answers must be unanimous.
>
> I.    Was the 09-30-88 will signed and executed by Nora Holt?
>
> Was the 09-30-88 will properly executed and witnessed?
>
> II.   Did Nora Holt have sufficient mental capacity to understand that she was making a will on 09-30-88?
>
> Did Nora Holt have sufficient mental capacity to understand and recall the nature of and situation of her property on 09-30-88?
>
> Did Nora Holt have sufficient mental capacity to remember and understand relations to living descendants and to persons whose interests would be affected by the will on 09-30-88?
>
> III.  Do the terms of the 09-30-88 will unduly benefit [Defendant] and/or Janice Davis?
>
> Are the terms of the 09-30-88 will different from the expressed intentions of Nora Holt?

> Did [Defendant's] or Janice Davis' relationship to Nora Holt give [Defendant] or Janice Davis an opportunity to influence the terms of the will?
>
> Did the mental and physical condition of Nora Holt allow Nora Holt's freedom of choice to be overcome by the actions of [Defendant] or Janice Davis?
>
> Did [Defendant] or Janice Davis actively take part in determining the provisions of Nora Holt's 09-30-88 will or in causing said will to be executed?
>
> Do the provisions of the 09-30-88 will favor people who have no blood relationship to the maker of the will over people who have a blood relationship?

IV.    Was [Defendant] active in causing the 09-30-88 will to be made and unduly profited from it?

> Has it been demonstrated by clear and convincing evidence that the making of the 09-30-88 will was not the result of undue influence by [Defendant]?

The Special Verdict Form's final question was a general verdict which stated as follows:

> We, the jury, therefore, unanimously find in favor of:
> _____    Contestants, Arvil Holt and Beulah Jones [Plaintiffs]
> _____    Proponent, Zula Parton   [Defendant]

The trial transcript contained in the record on appeal shows that sometime during the first day of its deliberations, the jury apparently passed a note to the Trial Court who then summoned the jury to the courtroom. With the parties and their attorneys present and without objection of counsel, the Trial Court reviewed the as-yet uncompleted Special Verdict Form, only stating whether each question had been answered without giving the substance of the answer. The Trial Court excused the jury for the day and then had a brief conference with the parties' counsel regarding how the jury should be instructed, stating as follows:

> I would like to put on this note that the answers to their questions should not be inconsistent with one another. Now obviously that's a strong indication that I have detected an inconsistency and you all know what that can do possibly . . . .

-3-

But then on the other hand inconsistent verdicts are set aside. I don't know whether each of these consitutes a separate little verdict or not but I'm kind of inclined to think that in a sense it does. . . .

After hearing arguments from both parties' counsel, the Trial Court decided to prepare a hand-written note which instructed the jury that "it might be helpful if you make sure that the facts which you determine, in order to answer the question on the verdict form, must be consistent with one another."

The record contains several hand-written notes from the jury and the Trial Court. It is not clear from the record when the attorneys became aware of these written exchanges. At any rate, before court was concluded on the first day of deliberations, Defendant's counsel asked the Trial Court to copy and place under seal all correspondence between the Trial Court and the jury.

The Trial Court's Final Judgment states that on the second day of deliberations, the jury foreperson handed the Trial Court a note which advised it that the jury had answered all of the special interrogatories on the Special Verdict Form but was not able to reach a unanimous decision on the general verdict for either party. At that time, the Trial Court had the jury return to the courtroom and stated as follows:

> TRIAL COURT:     Okay. Mrs. Presiding Juror, if you would give to Mr. Montgomery, [sic] the verdict form that you now have. One thing that concerns the Court is the necessity of keeping from the attorneys what the jury has been doing. And I've never had the thought pass through my mind that I would want to address the jury in the absence of the attorneys. But it is crossing my mind now because you all are required to make judgment calls and decisions and if I gave you any indication at all as to which way the wind was going, it could affect your responses. *I'm going to ask all parties, witnesses and attorneys to step outside the courtroom. The court reporter obviously must remain here. There will be no change made in this document until it has been copied and sealed. But that's what I'm going to do. It's very, very strange without saying the least.*

(emphasis added). [Counsel for both parties objected. The parties and counsel were excused from the courtroom, and the following *ex parte* communication occurred between the Trial Court and the jury:]

> TRIAL COURT:     The question that was submitted, obviously, and I now after looking at the verdict form realize that *all questions have been answered except the ultimate question.* And there may be some inconsistency but I'm not sure. *I think according to the rules when the answers are consistent with each other but one or more is inconsistent with the general verdict the Court may direct the entry*

-4-

*of judgment in accordance with the answers not withstanding [sic]
the general verdict.*

> *Actually, the general verdict or the verdict in this case is the
> one that you can't agree upon. That part of this form basically says
> that you either find in favor that [sic] [Plaintiffs], which means that
> the will is set aside, it's void, or you find in favor of [Defendant]
> which means that the will is good . . . .* We may have should have
> either left that last part off or indicated more clearly that that is the
> bottom line, that decides the whole case. But in Section I where you
> all have indicated that the will was not signed or executed by Nora
> Holt *that means there was no will.* Was it properly executed and
> witnessed? If you made a unanimous finding that it was not, that
> reinforces the fact that there is no will in existence. *And then, and
> this was never told to you, but that means that you would have to find
> in favor of [Plaintiffs]. But as I understand it, you can't agree upon
> that.*

(emphasis added).

The jury foreperson then explained to the Trial Court that the jury had unanimously agreed on both of the questions in Section I. The jury foreperson stated, in pertinent part, as follows:

> FOREPERSON:       *And if those first two questions is the result to
> the answer on the last question, then we agree on the last question
> too.* Our argument on the last one was that we didn't find in favor of
> either one, and that could have been a very personal type of thing that
> we just, I don't know how to explain it, *but we just didn't think what
> [sic] either one of them showed the burden of proof to win their side
> of the case.* Am I saying that right?
>                    \* \* \* \* \* \*
> It was just a matter of not really thinking either one of them presented
> a good case. Now as far as answering the questions, we did
> unanimously agree that the burden of proof, whoever it was on in
> those certain questions, that the burden of proof was not met and
> that's how we unanimously came upon each one of those decisions.
> *But the final question was that we were indecisive as to if either side
> actually showed enough burden of proof that we could honestly pick
> one.*

(emphasis added).

Upon the jury foreperson's request, the Trial Court reviewed each of the jury's answers to the special interrogatories in the Special Verdict Form. Thereafter, the Trial Court stated that he was going to bring the parties and their attorneys back inside the courtroom and that "[u]ntil

-5-

I kind of had some dialog with you, I didn't really know what was going on in your all's minds, but I think I do now."

The Trial Court then returned the parties and their attorneys to the courtroom and orally re-reviewed the jury's answers to the special interrogatories, asking for a show of hands from the jurors to affirm whether the answers read were, indeed, the jury's answers.[1] The Trial Court then asked the jury foreperson to explain the jury's answers to the special interrogatories. Regarding Section I which covered the issue of Nora Holt's mental capacity on the date of the Will's execution, the jury foreperson stated, in pertinent part, as follows:

> FOREPERSON: Intervene if I say this wrong, okay. I think they carried the burden but they did not have proof, they didn't have the burden of proof for that particular day, 9/30/88 . . . .
> That she did not have sufficient mental capacity. The date was the thing that decided those three questions.

After re-reviewing each question and answer with the jury, the Trial Court asked the jury if they wanted "to deliberate further and [answer] the final question?" In response, the jury foreperson stated that "[a]pparently everybody is in favor." The Trial Court then asked again if the jury wanted to engage in further deliberations to which the jury foreperson responded "[r]ight." The Trial Court then entertained a question from one of the jurors:

> JUROR: I can't speak for the other jurors but I don't understand, it's almost like we have got three issues, so we may have three verdicts. So how do we pick one answer? Does that make any sense? I guess I need instructed how you want that answered. Does that – is there three different issues?
>
> TRIAL COURT: There are – looking at the special verdict form any one of the three issues could make the decision for you. But then you have to look to the answers that you have already found.

The parties' attorneys then approached the bench, and Plaintiffs' counsel stated that if "the jury finds that this is not the will of Nora Holt that's it." The Trial Court stated that it did not find any inconsistencies in the jury's answers "and it may be that I could at this point simply state that this jury has found in favor of [Plaintiffs]. But I don't want to do that if it's going to be taking something away from the jury." Although the record is somewhat unclear, it appears that Defendant's counsel then objected to the Trial Court's allowing the jury to deliberate further after the Trial Court reviewed the jury's answers to the special interrogatories.

---

[1] Plaintiffs, in their Response to Motion for New Trial, stated that upon the return of the parties and attorneys to the courtroom, the Trial Court played a tape recording of what transpired during the Trial Court's *ex parte* communications with the jury. The trial transcript contained in the record on appeal, however, does not indicate such.

Plaintiffs' counsel then requested that the Trial Court, "based on the answers to the special verdict form enter a verdict as a matter of law that they found that it is not her will." Defendant's counsel objected. In apparent agreement with Plaintiffs' counsel, the Trial Court responded as follows:

> I do want to point out that they have signed and dated it already. I'm going to go ahead and make – take – at this point, take the answers and all the special questions and find as a matter of law that they have found in favor of the contestants.

Defendant's counsel renewed his objection The Trial Court then charged the jury, in pertinent part, as follows:

> [B]ased upon the answers given in the special verdict form, based upon the Court's satisfaction that what may have appeared to be an inconsistent answer, was not in fact inconsistent. . . . You treated them as isolated questions. And thus caused the appearance of some inconsistency. The Court now will enter a verdict in this case in favor of the contestants of this will, [Plaintiffs]. . . .

Thereafter, the Trial Court entered its Final Judgment in which it stated that "over objection of both counsel, [it] reviewed the special verdict form with the jury outside presence of counsel." The Trial Court also held, in its Final Judgment, in pertinent part, as follows:

> [A]s set forth in the attached special verdict, the Jury having found that the will at issue was not in fact the will of Nora Holt and was not properly witnessed and executed, this court finds as a matter of law that said will is set aside and the estate of Nora Holt is to pass intestate . . . .

Defendant filed a Motion for New Trial or, in the Alternative, to Reconsider or Alter and/or Amend Judgment ("Motion for New Trial"), raising a number of grounds, including: (1) that the Trial Court erred in failing to declare a mistrial when the jury failed to agree on a material issue; (2) that the Trial Court's *ex parte* communications with the jury "unduly interfered with the jury process"; and (3) that the jury's findings of fact were inconsistent as a matter of law and a result of "misinterpretation or misapplication of the jury instructions." In their response to Defendant's Motion for New Trial, Plaintiffs argued that Defendant could not demonstrate that prejudice resulted from the Trial Court's *ex parte* communications with the jury. Plaintiffs also contended that the Special Verdict Form used by the jury in this matter was a Tenn. R. Civ. P. 49.*01* form, that is, a set of questions of fact for the jury's decision, leaving the ultimate legal conclusions to the Trial Court, as opposed to a Tenn. R. Civ. P. 49.*02* general verdict accompanied by answer to interrogatories form, or a general verdict form. The Trial Court denied Defendant's Motion for New Trial. Defendant appeals. We vacate and remand.

**Discussion**

On appeal and although not stated exactly as such, Defendant raises the following issues:

1.  The Trial Court's *ex parte* communications with the jury constitute reversible error since it resulted in prejudice to Defendant.

2.  The Trial Court erred in failing to declare a mistrial when the jury announced that they were unable to reach a general verdict but had reached inconsistent answers to the special verdict questions regarding the issue of Nora Holt's testamentary capacity and the issues of undue influence and the execution of the Will.

3.  The Trial Court provided erroneous jury instructions regarding the burden of proof related to the execution and validity of the Will which caused confusion among the jury.

4.  The jury's finding that the Will was not properly executed is not supported by any material evidence.

5.  The Trial Court erred in failing to grant Defendant's Motion for Directed Verdict on the issue of undue influence and gave erroneous instructions regarding the burden of proof on this issue as it related to the parties' sister, Janice Davis.

Although they raise no additional issues on appeal, Plaintiffs argue, with respect to Defendant's first issue, that the Special Verdict Form used in this matter must be considered both a general and a special verdict and the Trial Court's decision to render a legal conclusion must be viewed as his acting as 13th juror. Plaintiffs contend, in response to Defendant's second issue, that the Trial Court found the jury's findings were consistent and was satisfied that the jury had rendered a verdict. It follows, Plaintiffs argue, that it was incumbent upon the Trial Court to uphold the jury's verdict, if possible. Neither party raises on appeal an issue regarding the Trial Court's *sua sponte* empaneling of a jury to try this matter.[2]

---

[2] We note that this Court has held that "[t]here is no provision [in Tenn. R. Civ. P.] which permits the trial judge to impanel a jury on his own motion; there must be a demand by a *party*." *Smith v. Williams*, 575 S.W.2d 503, 505 (Tenn. Ct. App. 1978) (emphasis in original) (reviewing Tenn. R. Civ. P. 38 and 39).

-8-

Since the dispositive issues on appeal involve only the Trial Court's conclusions of law, our review is *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

Our first inquiry in this matter involves the actual nature of the Special Verdict Form used by the jury. Tenn. R. Civ. P. 49 discusses the use of two types of forms by juries in making their findings. Rule 49.01 discusses special verdict forms which contain "a special written finding upon each issue of fact." In contrast, Rule 49.02 provides for a general verdict form and "written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict." Tenn. R. Civ. P. 49.02 further provides:

> The court shall give such explanation and instruction as may be necessary to enable the jury to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict.

Rule 49.02 goes on to provide that once the jury returns a general verdict, the trial court has a series of options, the choice of which is dependent upon whether the trial court finds the jury's special interrogatory answers consistent with each other and with their general verdict.

Our Supreme Court explained the difference between a special verdict and a general verdict accompanied by special interrogatories as follows:

> A special verdict is in lieu of a general verdict, and must find all the ultimate facts in issue, in order to form the basis of the judgment to be rendered. But special issues or interrogatories are put to the jury to elicit their answers *to accompany their general verdict* for the purpose of ascertaining the basis of that verdict and testing its consistency with such answers.

*Harbison v. Briggs Bros. Paint Mfg. Co.*, 354 S.W.2d 464, 469 (Tenn. 1962) (alteration in original), *rev'd on other grounds Ennix v. Clay*, 703 S.W.2d 137, 139 (Tenn. 1986).

Although the document used by the jury in this case is captioned "Special Verdict Form," we hold that the document is a Tenn. R. Civ. P. 49.02 general verdict form accompanied by special interrogatories. This jury was furnished and used a document which contained a series of fact questions plus a general verdict question which asked the jury to ultimately find in favor of one party or the other.

Plaintiffs, in support of their argument that the Special Verdict Form used in this matter was both a special and a general verdict form, cite *Scott v. Atkins*, 314 S.W.2d 52 (Tenn. Ct.

App. 1957). In *Scott*, this Court held that the form provided to the jury for its findings was both a general and special verdict, explaining as follows:[3]

> [T]he verdict of the jury must be considered both general and special, since the Court submitted the general and special issues to the jury to be answered 'yes' or 'no'. After these special issues were answered, though the Court could have, without further report from the jury, based its judgment upon the answers given, the inquiry by the Court and the response by the jury . . . constitutes a clear, general verdict in favor of the will. So, in the instant case, it appears that the Trial Judge sustained both the special and general verdicts of the jury, acting as the Judge and the 13th juror.

*Id.* at 61.

We find *Scott v. Atkins* readily distinguishable from this case due to this jury's failure or lack of opportunity to return a general verdict. Here, after the jury told the Trial Court that they were unable to decide the general verdict but wanted to deliberate further, the Trial Court engaged in further *ex parte* communications with the jury regarding their deliberations. Thereafter, the Trial Court did not allow the jury to deliberate further and, in effect, decided the general verdict itself instead of the jury. By contrast, in *Scott v. Atkins*, the jury answered all of the questions provided to them, both the special and general issues, all of which concerned only the contents and probate of the will at issue. *Id.* at 58. Accordingly, since the jury in *Scott v. Atkins* was asked to decide a comparatively limited issue and actually reached a final decision, *Scott v. Atkins* is not applicable to our analysis here. We hold, therefore, that the Special Verdict Form used in this matter was not both a special and a general verdict form but rather was a Tenn. R. Civ. P. 49.02 general verdict form accompanied by special interrogatories.

When a jury completes a Rule 49.02 form for a general verdict accompanied by interrogatories, the trial court has various options depending upon whether the general verdict and special interrogatory answers are harmonious. Here, the jury was not allowed to continue deliberations, despite their request to do so, to allow them to arrive at a general verdict. Absent a general verdict by the jury, there could be no decision whether or not the general verdict and the answers to interrogatories were harmonious and consistent with each other. Rule 49.02 presupposes

---

[3] The questions submitted to the jury in *Scott v. Atkins*, were as follows:

(1)    Were there other paper writings pertaining to the will . . . ?
(2)    Were those other papers ever presented to the proper Judge or Court for probate and filed along with the script?
(3)    Is the script propounded to the jury the full, complete, whole and last will . . .?

The trial court in *Scott* also instructed the jury "'[a]fter considering all the facts and circumstances in the case and the rules of law then write your verdict as you find for or against the will.'" *Scott v. Atkins*, 314 S.W.2d at 57. It is not clear from the opinion whether the jury was provided these questions in written form.

that the jury, when presented with a form for general verdict with special interrogatories, will be allowed to arrive at a general verdict as well as answer the interrogatories. The jury was presented with a form asking for a general verdict as well as for answers to special interrogatories. The jury had not yet arrived at a general verdict, but wanted to continue their deliberations in an attempt to do so. The jury deliberations were haulted in mid-stream and the form accepted without a general verdict being returned. This was error.

We next turn to the Trial Court's *ex parte* communications with the jury. As set forth above, after receiving a note from the jury that they had answered all of the questions on the Special Verdict Form except the ultimate issue, the Trial Court instructed the parties and attorneys to leave the courtroom. The record on appeal shows that the Trial Court delved into the status of the jury's deliberations and reviewed their answers to the special interrogatories. The Trial Court then charged the jury, *ex parte*, that since they found the Will was not properly executed, it "means that the [W]ill is set aside, it's void . . ." and "that means that you would have to find in favor of [Plaintiffs]. But as I understand it, you can't agree upon that." After the Trial Court returned the parties and counsel to the courtroom, it twice asked the jury if they would like to continue their deliberations, and the jury responded that they would. Nevertheless, the Trial Court, apparently in agreement with Plaintiffs' counsel, determined that the jury did not need further deliberations because they already found that the Will was not properly executed. The Trial Court then entered a judgment in favor of Plaintiffs.

The propriety of a trial court's *ex parte* communication was addressed by our Supreme Court in *Spencer v. A-1 Crane Serv.*, 880 S.W.2d 938 (Tenn. 1994). In *Spencer*, the Court was very specific in its instructions to trial judges who are faced with a question from the jury or an individual juror, holding as follows:

> [T]he only proper response by a trial judge to a question from the jury or an individual juror is to recall the jury, counsel, and parties into open court, hear the question, reinstruct the jury on the portion of the charge that responds to the question, if necessary and make clear that the repeated instruction should not be considered as emphasis of that portion of the charge.

*Id.* at 941.

The *Spencer* Court did not hold, however, that every *ex parte* communication, although erroneous, is always reversible error. *Id.* To determine whether *ex parte* communication between the trial judge and the jury is reversible error, the Court in *Spencer* provided the following rule:

> "The best position seems to us to be that a trial judge's *ex parte* communication with a jury in a civil case does not require reversal per se, but reversal is required where a *timely* complaining party shows specific prejudice or where, owing to the nature of the *ex parte*

> communication, the reviewing court is unable to determine whether
> the action was actually harmless."

*Id.* (emphasis in original) (quoting *Guy v. Vieth*, 754 S.W.2d 601, 605 (Tenn. 1988)). The *Spencer* Court also reviewed this holding in light of Tenn. R. App. P. 36(b), and found the two to be consistent.

In this matter, due to the facts and circumstances presented by the record on appeal and in light of our Supreme Court's holding in *Spencer v. A-1 Crane Serv., Inc.*, we hold that the *ex parte* communications between the Trial Court and the jury constitute reversible error because "the nature of the communication makes it impossible [for us] to determine whether the action was actually harmless." *Id.* at 942. After the Trial Court engaged in *ex parte* communications with the jury regarding the status of their deliberations, the jury foreperson specifically told the Trial Court on two occasions that although the jury had difficulty finding for either party, the jury wanted to deliberate further in an attempt to reach a general verdict. The Trial Court, however, did not allow the jury to deliberate further and entered its judgment apparently based upon the jury's answers to one portion of the special interrogatories and his *ex parte* communications with them.

We acknowledge that it would be speculative for us to predict what would have resulted from further jury deliberations in this matter, but we note that any number of outcomes were possible: the jury may have used further deliberations to change some of their answers to the special interrogatories; they may have decided the general verdict for one party or the other; or the jury may have determined that they were hopelessly deadlocked despite further deliberations. Regardless of the final outcome of the jury's deliberations, the jury should have been given the opportunity, without the *ex parte* communication, to deliberate until they decided the ultimate issue or determined that they could not unanimously decide the ultimate issue.

Since we cannot know what would have resulted from the jury's further deliberations after the Trial Court engaged in *ex parte* communications with them, it is not possible for this Court to determine that the Court's *ex parte* communications with the jury "was actually harmless." *Id.* at 941. We do know that as a result of the Trial Court's *ex parte* communication with the jury, the Trial Court took the case from the jury, preventing the jury from rendering a general verdict, and instead made the decision itself. We do not find this "harmless." *See Id.*

With respect to Defendant's remaining issues on appeal, we need not reach any decision regarding these issues as they are moot in light of our decision. The judgment of the Trial Court is vacated. This matter is remanded for further proceedings as necessary.

**Conclusion**

The judgment of the Trial Court is vacated and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellees, Arvil A. Holt and Beulah Holt Jones, and their surety.

_____
D. MICHAEL SWINEY, JUDGE