# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
### January 21, 2010 Session

## TINA TAYLOR, ET AL. V.
## LAKESIDE BEHAVIORAL HEALTH SYSTEM

**Direct Appeal from the Circuit Court for Shelby County**
No. CT-0006091-01      Charles O. McPherson, Special Judge

**No. W2009-00914-COA-R3-CV - Filed March 15, 2010**

This is a medical malpractice case. Appellant filed suit against Appellee Hospital after Appellant's decedent suffered several falls and a broken hip while a patient at Appellee Hospital. The trial court granted Appellee Hospital's Tenn. R. Civ. P. 12.02(6) motion, thereby dismissing Appellant's amended complaint. Specifically, the trial court held: (1) that the amended complaint was ineffective to give notice to Appellee Hospital because it did not reference the date(s) of decedent's falls, (2) that the medical malpractice claim and hedonic damages of the widow arising therefrom were dismissed by previous orders of the court, and (3) that the proof did not support the averments made in the amended complaint. After review, we conclude: (1) that the amended complaint is sufficiently specific to satisfy Tenn. R. Civ. P. 8, and to state a claim for medical malpractice against the Appellee Hospital, (2) that the previous orders of the trial court only dismissed the wrongful death claims and widow's loss of consortium claims arising therefrom, and not the medical malpractice claims, and (3) that the trial court reviewed matters outside the pleadings so as to trigger summary judgment analysis under Tenn. R. Civ. P. 12.03, and (4) that there are disputes of material fact in this case so as to necessitate a full evidentiary hearing on the medical malpractice claim. Reversed and remanded for an evidentiary hearing on the medical malpractice claim against Appellee Hospital and on the widow's loss of consortium claims arising from the alleged medical malpractice.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S. and HOLLY M. KIRBY, J., joined.

Robert L. J. Spence and Regina Guy, Memphis, Tennessee, for the appellant, Tina Taylor.

William H. Haltom, Jr. and Andrea N. Malkin, Memphis, Tennessee, for the appellee, Lakeside Behavioral Health System.

**OPINION**

Between July 24 and September 21, 2000, Appellant Tina Taylor's father, David Kime, was a patient at Appellee Lakeside Behavioral Health System ("Lakeside"). It is undisputed that, while a patient at Lakeside, Mr. Kime was taking various medications, some of which caused him to be delirious and confused at times. In addition, Mr. Kime suffered from tremors in his extremities, which condition was most likely due to Parkinson's disease. During his stay at Lakeside, Mr. Kime suffered several falls. Following a fall on September 21, 2000, Mr. Kime was transferred to Methodist Hospital in Germantown, Tennessee, where he was diagnosed with a hip fracture, for which he underwent surgery on September 25, 2000. Following the surgery, Mr. Kime's condition continued to deteriorate. His temperature increased and he was observed to be lethargic, delirious, and disoriented. On October 5, 2000, Mr. Kime was transferred to the Primacy Health Care & Rehabilitation Center ("Primacy") where he continued to exhibit similar symptoms. On or about October 7, 2000, Mr. Kime's condition had not improved, and he was transferred to St. Francis Hospital in Memphis, where he was diagnosed with septic shock, stemming from a perforated viscus. Mr. Kime underwent surgery to repair the perforation, and was subsequently placed in the intensive care unit at St. Francis. On November 13, 2000, Mr. Kime died as a result of cardiopulmonary arrest due to sepsis.

The original complaint in this case was filed on October 1, 2001 by Mr. Kime's widow (and Ms. Taylor's mother), Margie Kime. The complaint, which alleged both medical negligence and wrongful death claims, was filed against Methodist Hospital, Lakeside, Primacy, Dr. Mary Missak, Dr. Michael Threlkeld, and Dr. Robert Burns.[1] Concerning Lakeside, the complaint states, in relevant part, as follows:

> 9. David Kime was a patient at [Lakeside] where he was on various medications which caused him to be delirious at times. Mr. Kime was very shaky and had a large amount of trembling of his extremities and was thought to have Parkinson's disease. During his admission at [Lakeside], Mr. Kime fell and was subsequently diagnosed with a left hip fracture. Following the fall Mr. Kime was no longer able to handle his affairs due to

---

[1] The cases against Dr. Missak and Methodist are still pending in the trial court. The claims against Dr. Threlkeld and Dr. Burns were dismissed. Primacy was not listed as a party-defendant in the amended complaint filed on February 3, 2009, *see infra*.

confusion, disorientation and incapacitation.

*                              *                              *

26. Defendant Lakeside['s] employee[s] failed to properly monitor and assist Mr. Kime and w[ere] further negligent in failing to provide a safe environment, causing him to fall sustaining a fractured hip.

*                              *                              *

32. Defendant...Lakeside...was negligent in not seeing that proper care was furnished to Plaintiff David Kime. More specifically, Plaintiff alleges that...Lakeside['s]... agents/employees were negligent in the medical care and attention rendered to the Plaintiff, and did not exercise the degree of care, skill and diligence used by such facilities and their staffs generally in this community under the circumstances which presented themselves at the time, including but not limited to, the choice of medical techniques employed in caring for Plaintiff David Kime.

*                              *                              *

34. Plaintiff alleges that as a direct and proximate result of the negligence and medical malpractice by the Defendants that David Kime suffered substantial damages as follows:

> a. caused to suffer and incur severe and physical damages to his body resulting in extreme pain and suffering, that he required medical treatment to treat his injuries initially and subsequent follow up care by physicians for continued treatment, thereby incurring substantial medical expenses as well;
> b. caused to endure severe emotional distress and mental anguish;
> c. caused to suffer the loss of the normal enjoyment of the pleasures of life;
> d. caused to suffer substantial loss of earning

capacity; and

e. caused to die.

35. Plaintiffs allege that as a direct and proximate result of the negligence and medical malpractice by the Defendant that Margie Kime, suffered substantial damages as follows:

a. caused to suffer and incur extreme emotional distress and mental anguish;

b. caused to suffer the loss of the normal enjoyment of the pleasures of life with her husband;

c. cause[d] to suffer loss of consortium.

In its Answer, filed on December 30, 2002, Lakeside states, in pertinent part, that:

9. In response to Paragraph 9 of the Complaint, defendant Lakeside admits that Mr. David Kime was formerly a patient at defendant hospital, and that during his admission he was on medication. Defendant Lakeside admits that during his admission at the hospital, Mr. Kime fell and was subsequently diagnosed with a fracture of the...hip. Defendant Lakeside admits that following the hip fracture, he was transferred to Methodist Hospital for care and treatment....

Although Lakeside admitted that Mr. Kime had fallen while at the facility, it denied any negligence stemming from his treatment and any fault in his death.

On May 7, 2003, Lakeside filed a motion for summary judgment, which motion was supported by the affidavit of Dr. Hal Brunt.

In opposition to the motion for summary judgment, Mrs. Kime identified two expert witnesses, Dr. Frank C. Westmeyer and Nurse Janet Kirk, who both opined that Lakeside had departed from the applicable standard of care in its treatment of Mr. Kime. Dr. Westmeyer went on to explain that, in his opinion, the ruptured bowel which caused the sepsis and subsequent cardiovascular incident occurred some time between October 7 and October 10, 2000, and that there was no direct connection between the hip repair surgery and the fecal impaction that ultimately caused the bowel rupture.

In her deposition, Nurse Kirk also opines that Lakeside deviated from the standard of

-4-

care. Specifically, Ms. Kirk states that, because of Mr. Kime's diagnosis with Parkinson's, he should have been moved to a room closer to the nurses' station, that he should have been checked every fifteen minutes as a fall precaution, and that a falls vest should have been used in his case.

On April 13, 2006, Lakeside filed an amended motion for summary judgment. By its amended motion, Lakeside averred that the alleged wrongful death of Mr. Kime was not caused by, or related to, treatment he received at Lakeside, but that his death was the result of independent, intervening events that occurred subsequent to the care and treatment rendered by Lakeside.

Sometime in August of 2007, Dr. Threlkeld and Dr. Missak filed motions to dismiss the individual claims of Margie Kime on grounds that hedonic damages are not allowed in wrongful death claims under Tennessee law. The parties ultimately agreed and, on May 11, 2007, Judge Rita Stotts entered a "Consent Order Dismissing All Individual Claims of Margie Kime." This Order states:

> This cause came to be heard upon announcement of Counsel that the parties have agreed that Margie Kime's individual claims in this lawsuit should be dismissed for failure to state a claim on which relief can be granted since she has no individual claim for the alleged wrongful death of David Kime.

Although there is no transcript of the hearing on Lakeside's motion for summary judgment, on March 5, 2008, Judge Stotts entered an order granting partial summary judgment to Lakeside. This Order provides, in relevant part, as follows:

> After having reviewed this matter, from which the Court is of the opinion that there is no genuine issue of material fact upon which the liability of Lakeside...can be predicated for the alleged wrongful death of the plaintiff's decedent, and that defendant Lakeside...should be granted partial summary judgment as to this issue,
> IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that partial summary judgment is entered for defendant Lakeside...as to all claims that the alleged negligence of Lakeside...caused the death of plaintiff's decedent.

Based upon the entry of these two orders, Mrs. Kime moved the court for leave to amend her complaint to clarify the exact causes of action she wished to bring against the

respective defendants. On April 10, 2008, Mrs. Kime died and, by order of June 27, 2008, the Kimes' daughter, Tina Taylor, was substituted, in her mother's place, as personal representative o/b/o her father, David Kime. The motion to amend the complaint was opposed by Lakeside. Specifically, Lakeside argued that Ms. Taylor's amended complaint should not be allowed because: (1) it does not clarify the claims and damages that apply to Lakeside; (2) it is an attempt to re-litigate the wrongful death claim against Lakeside that had been dismissed by Judge Stotts; (3) the claim for personal injury against Lakeside is barred by the statute of limitations and statute of repose; and (4) it would unduly prejudice Lakeside as Lakeside allegedly did not have notice of the claim. Unfortunately, before the issue of whether an amended complaint should be allowed could be decided, Judge Stotts died.

On January 30, 2009, Judge Charles McPherson, who had been assigned the case after Judge Stotts' death, issued an order granting Ms. Taylor's request to file an amended complaint. Concerning Lakeside, the amended complaint, which was filed on February 3, 2009, states:

> 9. David Kime was a patient at Defendant...Lakeside...Hospital where he was on various medications which caused him to be delirious at times. Mr. Kime was thought to have Parkinson's disease. During his admission at Defendant Lakeside, Mr. Kime suffered three falls. Following the third fall he was diagnosed with a left hip fracture. Following the fall Mr. Kime was no longer able to handle his affairs due to confusion, disorientation and incapacitation.
>
> *      *      *
>
> 26. Defendant Lakeside Hospital employees failed to properly monitor and assist Mr. Kime and w[ere] further negligent in failing to provide a safe environment, causing him to fall sustaining injury, resulting in a fractured hip.
>
> *      *      *
>
> 31. Defendant...Lakeside Hospital was negligent in not seeing that proper care was furnished to Plaintiff David Kime. More specifically, Plaintiff alleges that...Lakeside Hospital's agents/employees were negligent in the medical care and attention rendered to the Plaintiff, and did not exercise the degree of care, skill and diligence used by such facilities and

their staffs generally in this community under the circumstances which presented themselves at the time, including but not limited to, the choice of medical techniques employed in caring for Plaintiff David Kime, causing him to fall sustaining injury resulting in a fractured hip.

\*                                      \*                                      \*

33. Plaintiff Margie Kime now deceased since she brought this cause of action o/b/o her husband David Kime, deceased, is entitled to receive the pecuniary value of the life of David Kime. David Kime was the loving husband of Margie Kime, and was the companion and friend of his wife Margie Kime, providing companionship, cooperation, affection and aid, but by reason of his injuries and death she was deprived of the services and consortium of her husband as a result of said negligence and injuries caused by the Defendants Methodist...Hospital, Mary Samuels Missak, M.D., and Michael G. Threlkeld, M.D.

\*                                      \*                                      \*

35. Plaintiff alleges that as a direct and proximate result of the negligence and medical malpractice by the Defendant...Lakeside...Hospital, that David Kime suffered substantial damages as follows:

a. caused to suffer and incur severe and physical damages to his body, resulting in extreme pain and suffering, that he required medical treatment to treat his injuries initially and subsequent follow up care by physicians for continued treatment, thereby incurring substantial medical expenses as well;
[b]. caused to endure severe emotional distress and mental anguish as a result of his injury from his fall at Defendant...Lakeside;
[c]. caused to suffer the loss of the normal enjoyment of the pleasures of life as a result of his injury from the fall at Defendant....Lakeside.
[d]. caused to suffer substantial loss of earning

capacity.

36. Plaintiff David Kime was the loving husband of Margie Kime, who is now deceased, since the filing of this cause of action, and was the companion and friend of his wife Margie Kime, providing companionship, cooperation, affection and aid, but by reason of her husband David Kime's injuries, she was deprived of the services and consortium of her husband. Plaintiff Margie Kime is entitled to recover the reasonable value of her injured spouse's services and the reasonable value of her injured spouse's companionship as well as the reasonable value of acts of love and affection that she lost growing out of said negligence and injuries caused by Defendant...Lakeside. In addition, Margie Kime is entitled to recover expenses reasonably incurred in attending her husband David Kime at the hospital as a result of his injuries resulting from Defendant...Lakeside's negligence.

\* \* \*

2. That as a result of the medical negligence and injuries caused by Defendant...Lakeside Hospital, [Plaintiffs] have and recover Compensatory Damages for pain and suffering–both physical and mental; loss of enjoyment of life as well as medical expenses and all other damages allowed under Tennessee law in the amount of ONE MILLION DOLLARS ($1,000,000.00);

3. That as a result of the medical negligence and injuries caused by Defendant...Lakeside to her husband David Kime, that Margie Kime receive compensation for the reasonable value for her injured spouse's services, companionship and acts of love and affection that she lost in the amount of TWO HUNDRED THOUSAND DOLLARS ($200,000.00).

In response to the amended complaint, on February 19, 2009, Lakeside filed a motion to dismiss the amended complaint pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim upon which relief can be granted. Specifically, Lakeside posits its motion on the following grounds: (1) "because the allegations against Lakeside in the amended complaint are not supported by the proof, and were never alleged in the plaintiff's answers to discovery, expert witness affidavits, or the discovery depositions of the plaintiff's expert witnesses;" (2)

-8-

"[t]he factual allegations in the plaintiff's amended complaint fail to state the date(s) on which the falls allegedly occurred;" (3) "because the loss of consortium claim for Margie Kime is improper;" and (4) "because the damages claims are not consistent with the Court's Order dismissing all wrongful death claims against Lakeside, and are not supported by the evidence."

On March 20, 2009, the hearing on Lakeside's motion to dismiss was held before Judge McPherson. At that hearing, Judge McPherson made the following, relevant comments from the bench:

> [P]art of [the] motion, and I think the crux of [the] motion is that legally this Amended Complaint cannot stand because the Court has already dismissed these claims against Lakeside....
>
> \*                \*                \*
>
> The Court has reviewed this matter, and I think we are talking semantics here, but the Court feels that the Motion to Dismiss the Amended Complaint is well taken and should be granted....

The Order granting Lakeside's motion to dismiss was entered on April 9, 2009. The Order provides, in relevant part, as follows:

> This cause came to be heard on the Motion of Defendant, Lakeside...to dismiss the Amended Complaint pursuant to Rule 12.02(6). The Court, having reviewed the pleadings herein and prior orders of the Court and having heard oral argument from counsel for the parties, finds that the Amended Complaint is legally insufficient as it seeks to advance causes of action that were previously dismissed by the Court, contains allegations that are not supported by the proof and were never alleged in Plaintiff's answers to discovery, expert witness affidavits, or discovery depositions of Plaintiff's experts, and fails to specifically state the date(s) of the alleged negligent acts of Defendant Lakeside. The Court further finds pursuant to Rule 54.02 that there is no just reason for delay of the entry of a final judgment for Defendant Lakeside....
>
> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Motion of Defendant Lakeside...to dismiss, pursuant to Rule 12.02(6), is granted, and the Court expressly

directs the entry of a final judgment on behalf of Defendant Lakeside....

Ms. Taylor appeals and raises four issues for review as stated in her brief:

> I. Whether the trial court erred in ruling that Appellant failed to state a claim upon which relief could be granted on the basis that Appellant's Amended Complaint did not specifically state the date(s) of the negligent acts of Appellee?
>
> II. Whether the trial court erred in ruling that Appellant failed to state a claim upon which relief could be granted on the basis that Appellant's Amended Complaint "contained allegations that are not supported by the proof and were never alleged in Plaintiff's answers to discovery, expert witness affidavits, or discovery depositions of Appellant's experts?"
>
> III. Whether the trial court erred in finding that a Consent Order dismissing Appellant's individual claims in a lawsuit due to a lack of cause of action relating to her wrongful death claim also served to dismiss Appellant's individual claims relating to her personal injury action?
>
> IV. Whether the trial court erred in finding that Appellant's Amended Complaint alleging medical negligence was in violation of the previous court order dismissing all wrongful death claims against Appellee?

Our normal course at this point in an opinion is to discuss the applicable standard of review and law. However, the protracted procedural history and, frankly, the maladroitly drafted orders that comprise that history make our task quite difficult. We know that the April 9, 2009 order appealed was predicated upon Lakeside's Tenn. R. Civ. P. 12.02(6) motion. It is well settled that a motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations, but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson*, 941 S.W.2d 44 (Tenn.1997). When considering a motion to dismiss for failure to state a claim upon which relief can be granted, courts are limited to an examination of the complaint alone. *See Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct. App.1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state

a claim as a matter of law. ***See Cornpropst v. Sloan***, 528 S.W.2d 188 (Tenn.1975). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. ***See Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.***, 878 S.W.2d 934 (Tenn.1994). However, Tenn. R. Civ. P.12.03 provides that:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

As discussed by this Court in ***Brewer v. Piggee***, No. W2006-01788-COA-R3-CV, 2007 WL 1946632 (Tenn. Ct. App. July 3, 2007), "[t]he phrase 'matters outside the pleadings' has been described in the caselaw as additional evidentiary materials or, stated differently, extraneous evidence." ***Brewer***, 2007 WL 1946632, *6 (citing ***D.T. McCall & Sons v. Seagraves***, 796 S.W.2d 457, 459-60 (Tenn. Ct. App.1990)).

In his April 9, 2009 order the trial judge states that, in reaching his decision, he " reviewed the pleadings herein and prior orders of the Court and heard oral argument from counsel for the parties." The order also states that the Amended Complaint "contains allegations that are not supported by the proof and were never alleged in Plaintiff's answers to discovery, expert witness affidavits, or discovery depositions of Plaintiff's experts." It is obvious from the litany of sources contained in the order that the court relied on more than the allegations contained in the Complaint and Amended Complaint to determine if dismissed was required. Consequently, this leads us to conclude that, pursuant to Tenn. R. Civ. P.12.03, Lakeside's motion to dismiss should have been treated as one for summary judgment. In short, if a party files a motion to dismiss for failure to state a claim and includes matters outside the pleadings, the trial court, upon considering the material outside the pleadings, must review the motion as a motion for summary judgment pursuant to Tenn. R. Civ. P. 56. Tenn. R. Civ. P. 12.02; ***see also Staats v. McKinnon***, 206 S.W.3d 532, 543 (Tenn. Ct. App.2006).

Turning back to the April 9, 2009 order, from the specific findings set out therein, it does not appear that the trial court clearly applied either the Tenn. R. Civ. P. 12.02 standard, or the summary judgment standard in this case. Specifically, the grounds upon which the trial judge concluded that the "Amended Complaint is legally insufficient" are that the amended complaint: (1) seeks to advance causes of action that were previously dismissed by the Court; (2) contains allegations that are not supported by the proof and were never alleged

in Plaintiff's answers to discovery, expert witness affidavits, or discovery depositions of Plaintiff's experts; and (3) fails to specifically state the date(s) of the alleged negligent acts of Defendant Lakeside. Although grounds (1) and (3) are arguably sufficient to support a Tenn. R. Civ. P. 12.02(6) motion, ground (2) goes well outside the scope of a review of the pleadings alone. Although a reference to discovery depositions and proof seems to indicate a summary judgment analysis, the court's statement that the allegations are not supported by the proof indicates that the trial court went too far in its analysis. It is well established that a summary judgment analysis first requires a determination of whether a dispute of material fact exists. Here, the trial court makes no finding to indicate whether it concluded that the material facts were in dispute; rather, the trial court appears to have concluded that the allegations were not supported by the proof. This is usually the standard applied after a full evidentiary hearing, which was not held in this case. Consequently, in order to correctly analyze this issue we must determine the exact rulings made by Judge Stotts in the previous orders. This determination is necessary to determine what, if any, causes of action should have been allowed to survive in the amended complaint. Next, because the trial court determined that the failure to include the date of Mr. Kime's fall(s) in the amended complaint negates its effectiveness, we must also examine the sufficiency of the amended complaint on its face. Finally, if there are viable causes of action, and if the complaint is sufficiently specific, we must then determine utilizing the summary judgment standard of review because the trial court reviewed matters outside the pleadings whether there is a dispute of material fact and/or whether Lakeside is entitled to judgment as a matter of law.

### Judge Stotts' Orders

Concerning the May 11, 2007 order, we concede that there is some confusion between the heading of the order, which is titled "Consent Order Dismissing **All** Individual Claims of Margie Kime" (emphasis added), and the body of the order, which states, in relevant part, that: "Margie Kime's individual claims in this lawsuit should be dismissed for failure to state a claim on which relief can be granted since she has no individual claim for the alleged wrongful death of David Kime." On appeal, Lakeside contends that this order dismissed all hedonic claims asserted by Mrs. Kime, whether arising from the wrongful death claims or from the medical negligence claims.

The Tennessee statute governing wrongful death actions identifies two classifications of damages recoverable in wrongful death actions. *Thrailkill v. Patterson*, 879 S.W.2d 836 (Tenn.1994); *Jordan v. Baptist Three Rivers Hosp*., 984 S.W.2d 593 (Tenn.1999). The Tennessee wrongful death statute, Tenn. Code Ann.§ 20-5-113, allows for the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the

-12-

injuries received.[2]  The first category of damages stems from injury sustained by the decedent between the time of injury and death. ***Jordan v. Baptist Three Rivers Hosp***., 984 S.W.2d at 600.  This category encompasses  medical expenses, funeral expenses, physical and mental pain and suffering, lost wages, and loss of earning capacity. ***See id.*** Recovery for pain and suffering requires proof of conscious injury. ***Knowles v. State***, 49 S.W.3d 330, 338 (Tenn.Ct.App.2001)(citing ***Hutton v. City of Savannah***, 968 S.W.2d 808, 811 (Tenn.Ct.App.1997)).  Moreover, hedonic damages, or compensation for the loss of enjoyment of life, are not recoverable under Tennessee's wrongful death statutes. ***See Jordan***, 984 S.W.2d at 595 n. 2; ***Spencer v. A-1 Crane Serv., Inc.***, 880 S.W.2d 938, 943 (Tenn.1994).[3]

The second category, considered "incidental damages," arises from injury sustained by the decedent's spouse or next of kin and includes the pecuniary value of the decedent's life. ***Jordan***, 984 S.W.2d at 600; ***Spencer v. A-1 Crane Serv., Inc***., 880 S.W.2d 938, 943 (Tenn.1994).

Although individual hedonic claims are not recoverable in wrongful death actions in Tennessee, we know that these types of damages are allowed if they flow from a medical negligence claim.  Turning back to the May 11, 2007 Order, although the header purports to dismiss "all" of Mrs. Kime's individual claims, the body of the order indicates that the reason for this ruling is because Mrs. Kime "has no individual claim for the alleged wrongful death of David Kime."  Based upon the foregoing discussion, we know that Mrs. Kime had no independent claim for loss of consortium for her husband's alleged wrongful death, but we do know that (unless she consented to dismissal), her hedonic claims arising from any medical negligence continued to exist.  From the totality of the circumstance, we conclude that the May 11, 2007 Order dismisses only the independent hedonic claims asserted *vis a vis* the wrongful death claims; however, at this point in the procedural history, Mrs. Kime's

---

[2] The statute provides:

> Where a person's death is caused by the wrongful act, fault or omission of another and suit is brought for damages, as provided for by §§ 20-5-106 and 20-5-107, the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.

[3] The ***Jordan*** Court specifically held that "[t]his holding does not create a new cause of action [for loss of consortium] but merely refines the term 'pecuniary value.'" ***Jordan***, 984 S.W.2d at 600.

claims on behalf of her husband for wrongful death and medical malpractice survive, as well as any individual claims for loss of consortium arising from the medical malpractice.[4]

The March 5, 2008 order, which was also entered by Judge Stotts, purports to grant partial summary judgment in favor of Lakeside. The question is which of the causes of action averred by Mrs. Kime were decided in favor of Lakeside. Specifically, the order dismissed "all claims that the alleged negligence of Lakeside...caused the death of plaintiff's decedent" Although Judge Stotts references the negligence of Lakeside, she specifies that she is dismissing any claims of negligence that "caused the death" of Mr. Kime. It is a well settled that a trial court speaks through its orders, *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn.Ct.App.1997). From the plain language of the March 5, 2008 Order (and the fact that it purports to grant only **partial** summary judgment), we can only conclude that the court granted summary judgment to Lakeside on the wrongful death claims asserted against it. Consequently, at this point in the procedural history, the medical negligence, as well as the individual hedonic claims of Mrs. Kime arising therefrom, are still viable claims. We now address whether the amended complaint is sufficient to state a claim for medical malpractice against Lakeside, and/or to state a claim for hedonic damages on the part of Mrs. Kime arising from the alleged medical malpractice.

## Sufficiency of the Amended Complaint

As discussed in detail above, when Ms. Taylor was substituted in her parents' suit, she moved the court for leave to amend her complaint to define the specific causes of actions that existed after the entry of Judge Stotts' orders. Based upon the foregoing discussion, those causes of action included both the medical negligence claims and the loss of consortium claims arising therefrom. Based upon Judge Stotts' orders, any attempt to raise a wrongful death claim, or an individual hedonic claim arising therefrom, should have been disallowed in the amended complaint. However, any averments of medical malpractice and/or loss of consortium arising therefrom, should have been evaluated for sufficiency and not dissallowed *ab initio*.

Here, the trial court found that the amended complaint failed to state a claim on which relief could be granted because Ms. Taylor failed to include the actual date(s) of Mr. Kime's falls at the Lakeside facility. Tenn. R. Civ. P. 8 governs pleadings and provides, in pertinent part, as follows:

---

[4]For purposes of this opinion, we will refer to Mrs. Kime's claims for personal injury on behalf or her husband, and her individual claim for loss of consortium arising therefrom as "medical malpractice" or "medical negligence." We, however, do not make a determination as to whether her allegations, in whole or part, amount to medical negligence or ordinary negligence.

**8.01 Claims for Relief.** — A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain: (1) a short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

\*            \*            \*

**8.05. Pleading to Be Concise and Direct —Statutes, Ordinances and Regulations —Consistency.** — (1) Each averment of a pleading shall be simple, concise and direct. No technical forms of pleading or motions are required. Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged. The substance of any ordinance or regulation relied upon for claim or defense shall be stated in a separate count or paragraph and the ordinance or regulation shall be clearly identified. The manner in which violation of any statute, ordinance or regulation is claimed shall be set forth.

\*            \*            \*

**8.06. Construction of Pleadings.** — All pleadings shall be so construed as to do substantial justice.

Moreover, Tenn. R. Civ. P. 1 mandates that the "rules shall be construed [liberally] to secure the just, speedy, and inexpensive determination of every action."

The Tennessee Medical Malpractice Act, Tenn. Code Ann. §29-26-115, *et seq*., codifies the common-law elements of negligence, i.e., duty, breach of duty, causation (proximate and legal), and damages. Although the Act requires specific proof, we find nothing therein concerning additional pleading requirements other than those contained in the Rules of Civil Procedure, *supra*. In short, there is no specific requirement, either in the Rules of Civil Procedure, or in the Medical Malpractice Act, that the specific dates of the alleged wrongdoing be specified in the pleadings. Although Tenn. R. Civ. P. 9.06,

concerning special pleadings, indicates that, "[f]or the purpose of testing the sufficiency of a pleading, averments of time and place are material, and shall be considered like all other averments of material matter," the notes to this rule specify that it "is not intended to create exceptions to the principles set out in Rule 8." Moreover, in her author's note in 3 Tenn. Prac. Rules of Civil Procedure Ann. §9:6 (2008-2009), Nancy MacLean notes that Tenn. R. Civ. P. 9.06 "does not require averments of time and place if they are unnecessary to give the defendant notice of the claim." In short, the purpose of a pleading is to give the defendant notice of the causes of action alleged against it and the facts giving rise thereto. Consequently, the sufficiency of the pleading varies from case to case.

Turning to the amended complaint, which is set out in fuller context above, we conclude that the omission of the dates of Mr. Kime's falls at Lakeside is not fatal. In fact, from our reading, it appears that Ms. Taylor has plainly and succinctly stated a cause of action for medical negligence against Lakeside, and has averred facts sufficient to put Lakeside on notice of that claim. Specifically, under the heading "Facts Giving Rise to Cause of Action for Medical Negligence," at paragraph nine, Ms. Taylor states that "David Kime was a patient at [Lakeside]...During his admission...Mr. Kime suffered multiple falls. Following the last fall he was diagnosed with a left hip fracture." This statement is sufficient to provide notice to Lakeside that the plaintiff is suing based upon falls he suffered during his admission. The mere lack of dates does not negate this notice. However, if Lakeside was unable to adduce when the falls occurred, or the exact events that gave rise to the suit, Tenn. R. Civ. P. 12.05. provides an opportunity to request a more definitive statement, to wit:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within fifteen (15) days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or may make such order as it deems just.

There is no evidence in the record that Lakeside availed itself of this provision. Nonetheless, we conclude that the amended complaint did aver facts sufficient to put Lakeside on notice of the events giving rise to the claim. The question then becomes whether the amended complaint states a claim for medical negligence against Lakeside.

Under "Acts of Negligence," in paragraph twenty-six of the amended complaint, Ms. Taylor specifically asserts that Lakeside's "employees failed to properly monitor and assist Mr. Kime and w[ere] further negligent in failing to provide a safe environment, causing him to fall sustaining injury, resulting in a fractured hip." In paragraph thirty-one, Ms. Taylor states, in relevant part, that Lakeside "was negligent in not seeing that proper care was furnished to Mr. Kime." A more specific statement follows: Lakeside's "agents/employees were negligent in the medical care and attention rendered to [Mr. Kime], and did not exercise the degree of care, skill and diligence used by such facilities and their staffs generally in this community." We conclude that these statements satisfy the pleading requirements for medical malpractice, i.e., Lakeside breached a duty by falling below the applicable standard of care in dealing with Mr. Kime because Lakeside allegedly failed to use necessary falls precautions in his case. In the section of the amended complaint entitled "Damages," and specifically at paragraph thirty-five thereof, Ms. Taylor avers that, as a direct and proximate result of this alleged negligence, Mr. Kime incurred: (1) physical damage to his body resulting in extreme pain and suffering, (2) substantial medical expenses, (3) severe emotional distress and mental anguish, (4) loss of the normal enjoyment and pleasures of life, and (5) substantial loss of earning capacity. Consequently, the amended complaint satisfies the requirements of Tenn. R. Civ. P. 8, and the Medical Malpractice Act, in that Ms. Taylor has averred duty, breach of duty, causation, and damages, and has averred facts sufficiently specific to give Lakeside notice of the acts giving rise to the negligence claim.

Lakeside also asserts that, the inclusion of a hedonic damages claim on the part of Mrs. Kime, *see* paragraphs thirty-three and thirty-six of the amended complaint above, should result in the dismissal of the amended complaint pursuant to Tenn. R. Civ. P. 12.02(6). We disagree. As discussed in detail above, while hedonic claims are not allowed in wrongful death actions in Tennessee, those claims are valid when arising from medical negligence. From our reading of the amended complaint, it does not appear that Ms. Taylor is attempting to revive the claim for wrongful death (or any loss of consortium claims on the part of Mrs. Kime arising therefrom), which claims were properly dismissed by Judge Stotts. Rather, from the amended complaint as a whole, we conclude that Ms. Taylor has averred only medical malpractice and concomitant hedonic claims arising therefrom. However, because the trial court looked beyond the four corners of the pleadings, we are required to apply the summary judgment standard, pursuant to Tenn. R. Civ. P. 12.03, to determine whether a dispute of material fact exists concerning the alleged medical malpractice and, if so, whether Lakeside is entitled to judgment as a matter of law.

### Summary Judgment

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. **Hannan v. Alltel Publ'g Co.**, 270 S.W.3d 1, 8-9 (Tenn.2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." **Id**. at 8. If the moving party's motion is properly supported, "The burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." **Id**. at 5(citing **Byrd v. Hall**, 847 S.W.2d 208, 215(Tenn.1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." **Martin v. Norfolk Southern Ry. Co.**, 271 S.W.3d 76, 84 (Tenn.2008) (citations omitted).

When reviewing the evidence, a court must determine whether factual disputes exist. In evaluating the decision to grant summary judgment, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. **Stovall v. Clarke**, 113 S.W.3d 715, 721 (Tenn.2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." **Mathews Partners**, No. M2008-01036-COA-R3-CV, 2009 WL 3172134 at *3 (Tenn. Ct. App. Oct. 2, 2009)(citing **Byrd**, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." **Byrd**, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." **Id.**

Turning to the record, in response to Lakeside's May 7, 2003 motion for summary judgment, which motion gave rise to Judge Stotts' order granting partial summary judgment (on the issue of wrongful death) in favor of Lakeside, Lakeside provided the affidavit of Dr. Hal Brunt in support of its motion. In his deposition, Dr. Brunt opined, in relevant part, that:

> From my review of the records, it is my opinion that in all their care and treatment of Mr. David Kime, the physicians and staff of Lakeside Hospital...conformed to the applicable standard of care.... It is further my opinion that Mr. Kime's fractured hip and any injuries allegedly incurred as a result thereof were not proximately caused by any departure from the standard of care on the part of Lakeside Hospital....

In response to Lakeside's motion, Mrs. Kime (the plaintiff at that time) identified two expert witnesses, Dr. Frank C. Westmeyer and Nurse Janet Kirk. In his deposition, taken on October 25, 2004, Dr. Westmeyer testified, in pertinent part, as follows:

> Q. You indicate in...your affidavit, that in your opinion, the nursing staff at Lakeside Hospital departed from the standard of care by failing to provide appropriate supervision and monitoring of Mr. Kime, correct, sir?
>
> A. Yes, that is correct.
>
> Q. And the basis for that opinion, as I read your affidavit, is that you did your own calculating of what the fall potential assessment scoring should be based on Lakeside's policies and procedures, correct?
>
> A. That's exactly correct.
>
> Q. And that you reached the conclusion that...the score for Mr. Kime should have been 27?
>
> A. That's right.
>
> Q. On the fall potential assessment scoring device, correct?
>
> A. That's correct.
>
> Q. And if that calculation is correct, then the standard of care would require the patient to have triage supervision and monitoring every 15 minutes, correct?
>
> A. Correct.
>
> Q. And you indicated...that the hospital couldn't have a nurse look at the patient every 15 minutes or so, so they needed to have a...person sitting beside the patient all the time; is that what you said...?
>
> A. Yes. I suspect that the only reasonable way to comply with their [Lakeside's] own policy and procedure manual would be

-19-

to hire an aide, $8.50 an hour.

Q. So...you are not of the opinion in this case that Lakeside failed to monitor this patient every 15 minutes as would be required by the assessment score, but that Lakeside should have had one-to-one supervision at every moment, every minute, correct?

A. Well, in my opinion they didn't do either one.

Q. What's the basis for your statement that [Lakeside] did not do periodic supervision and monitoring every 15 minutes?

A. Because in the nursing notes there's no indication they did, and there isn't any indication that they hired an aide, which in my opinion after 20 years of medicine is the only way they could have carried that out.

In her deposition, taken October 6, 2008, Nurse Kirk testified, in relevant part, as follows:

Q. What else [in the treatment of Mr. Kime was a deviation from the applicable standard of care]?

A. [O]n the fall potential assessment, the assessment will be done a minimum of weekly, and may be done more often as indicated by the treatment team. This [fall potential assessment] was done three times, Week 1, Week 2, and Week 3. And that was it.

Q. So again, it's your opinion that Lakeside didn't follow its protocol?

A. No.

Q. Was that a deviation from the standard of care?

A. Yes.

\*                              \*                              \*

Q. What else, if anything do you have to say about the protocols?

A. You know, [Lakeside] should have taken definitive action after the first fall. They didn't. They didn't take definitive action after the second fall.

Q. When you say definitive action, what did the standard of care require, in your opinion, after the first fall?

*         *         *

A. The vest, moving [the patient] closer [to the nurses' station], one to one [supervision].

Q. And you said previously that it was one to one [supervision] unless they did the vest and moved the patient closer [to the nurses' station]?

A. Right.

Q. Is that still your testimony?

A. Yes.... You know, one fall maybe, two falls, three falls? That's unreasonable. And particularly when you have, you have well spelled out policies on falls. But [Lakeside] just dropped the ball.

Q. ...Is it your opinion that had the fall potential assessment been performed each week, that the fall would absolutely have not occurred?

A. Yes.

Q. And how are you basing that?

A. Based upon the standards of care being implemented. And had the standards of care been implemented, then [Mr. Kime] would have been placed on stringent watch, you know, be it a vest, be it on one to one.

Q. Well, do you think that he needed to be on one to one toward the end of his hospitalization?

A. Certainly after the first fall. Certainly after the second fall.

Q. Even though his condition improved?

A. His gait was still unsteady.... He had already proven after two falls to be a fall risk.

The competing testimonies of Dr. Brunt and Dr. Westmeyer and Nurse Kirk absolutely give rise to a dispute of material fact in this case–that being whether, in caring for Mr. Kime, Lakeside followed the applicable standard of care and/or its own internal policies concerning fall precautions with this patient. Because there is a dispute of material fact, the summary judgment analysis should have ended in favor of a full evidentiary hearing on the alleged medical negligence and any damages (including the hedonic damages of Mrs. Kime) arising therefrom.

For the foregoing reasons, we reverse the judgment of the trial court, and remand the matter for an evidentiary hearing on the claim of medical malpractice against Lakeside, and any loss of consortium claims arising therefrom. Costs of this appeal are assessed against the Appellee, Lakeside Hospital, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE